THE UNITED STATES, PLAINTIFFS IN ERROR V. JACOB AND ISAAC
                        LEFFLER.

The United States instituted a joint action on a joint and several bond, executed by
    a collector of taxes, &c. and his sureties. The defendant, the principal in the
    bond, confessed a judgment, by a cognovit actionem, and the United States issued
    an execution against his body, on the judgment; upon which he was imprisoned,
    and was afterwards discharged from confinement under the insolvent laws of the
    United States. The United States proceeded against the other defendants, and
    on the trial of the cause before a jury, the principal in the bond having been re-
    leased by his co-obligors, was offered by the defendants, and admitted by the cir-
    cuit court, to prove that one of the co-obligors had executed the bond on condition
    that others would execute it, which had not been done. The circuit court admit-
    ted the evidence. Held that there was no error in the decision.
The principle settled by this Court, in the case of Bank of the United States v.
    Dunn, 6 Peters, 51, goes to the exclusion of the evidence of a party to a negotiable
    instrument, upon the ground of the currency given to them by the name of the
    witness called to impeach its validity; and does not extend to any other case to
    which that reasoning does not apply.

IN error to the circuit court of the United States for the eastern dis-
trict of Virginia.

The United States instituted an action of debt on a joint and seve-
ral bond executed on the 8th of December, 1816, by Salathiel Curtis,
Jacob Leffler, Isaac Leffler, Benjamin Biggs, and Reuben Foreman,
conditioned for the faithful performance by Salathiel Curtis, of the
duties of collector of taxes, then held by him. The cause abated as
to Biggs and Foreman, by their deaths.

After the institution of the suit, and prior to the trial of the same
against Jacob and Isaac Leffler, the defendants in error; Salathiel
Curtis, who had appeared and pleaded to the action, by his attorney,
withdrew his plea; and, having said nothing in bar to the action of
the plaintiffs, the court, on consideration thereof, gave judgment for
the plaintiffs against him for the debt mentioned in the declaration,
with costs. Afterwards, the United States sued out an execution on
the judgment against the body of the defendant, who was taken, and
was in the custody of the marshal; when, he being in such custody,
under a warrant from the President of the United States, bearing
date on the eighth day of May, 1824, he was duly discharged from

custody, under the insolvent laws of the United States, he having complied with the requisitions of those laws. .

The United States proceeded to a trial of the suit against the defendants, Jacob and Isaac Leffler, in December, 1835, upon issues joined on two pleas of Jacob Leffler; the first being a plea of non est factum, and the second a special plea, to the same effect, setting forth that he had executed the bond in question, as an escrow, and on the condition that it should be executed by certain other persons, as co-sureties for Salathiel Curtis, who did not execute the same. On the trial of the cause, the defendant, Jacob Leffler, to support the issue of non est factum, offered in evidence the deposition of Salathiel Curtis, which deposition was objected to by the district attorney of the United States. The deposition stated that Jacob Leffler and Reuben Foreman, executed the bond under the impression, and on the condition that the deponent could procure the signatures of other persons to the same, and they were not so procured.

The competency of the witness being so objected to on the part of the United States; evidence of the proceedings against him to judgment, and execution, and of his discharge under the insolvent laws of the United States, was given by the defendant Jacob Leffler; and the circuit court having overruled the objection, the deposition taken after the said proceedings, was admitted in evidence. The jury found a verdict for the defendant, in which judgment was given, and the United States having taken a bill of exceptions to the evidence, this writ of error was prosecuted on their behalf.

The case was argued by Mr. Butler, attorney-general, for the plaintiffs in error, and by Mr. Webster for the defendants.

Mr. Butler contended that the deposition of Salathiel Curtis was not admissible in evidence; and that the judgment of the circuit court should therefore be reversed, and a venire de novo awarded.

The precise question involved in the case before the court arose in the case of Pauling v. the U. S. 4 Cranch, 219; but it was not decided. The United States now insisted that the principal obligor in a bond is not a witness to invalidate it: he having affirmed it by executing it; and having by his own falsehood and fraud involved the public in the losses they sustained, by entering on his duties as the collector of taxes, under such circumstances.

The case of Walton v. Shelly, 1 Term Reports, was the first case

[United States v. Leffler.]

which decided the principle on which the admission of this evidence is resisted. While it is admitted the decisions of the courts of the different states vary as to the rule adopted in the case referred to; this Court, in the case of the Bank of the United States v. Dunn, have asserted and applied it, 6 Peters, 57. In Virginia, in a case in 3 Randolph's Rep. 316, it has been expressly repudiated.

It makes no difference where the bond was executed; and although executed in Virginia, it looked to the city of Washington for the performance of the conditions imposed by it; the principal obligor being a collector of taxes, and required by the law under which he acted to account for the taxes collected by him at the treasury department. This was so decided in the case of Coxe v. Dick, 6 Peters 173, 202. A bond executed in Louisiana was to be considered as made in the district of Columbia.

There is a slight difference between the condition of the bond in the two cases, but the difference is more favourable to the principle claimed. In this case, the duties of the officer were to be performed according to law; in Cox's case, the money was to be paid as the officer might be directed. If the law of this district is to prevail, the case is decided; for this Court has said that no one who has put his name to an instrument shall be permitted to discredit it. It is admitted that the case referred to was like that of Walton v. Shelly; in which the instrument was negotiable.

But if the law of Virginia is to prevail, it will be shown that the witness was a party to the suit, was interested in it, and could not by the defendant's release be made a witness.

The suit was brought on a joint and several bond, but the plaintiffs have united to treat it as a joint bond. It is a rule in Virginia, that in an action on a joint and several bond, the plaintiff may treat it as he pleases; but if he treats it as a joint bond, he must sue all; he cannot sue only a part of the obligors. 1 Henning and Munford, 61; 1 Munford, 406. This suit is against all the five obligors, and if the United States fail to make out a joint obligation they will be defeated.

Any thing which may serve an individual for his own defence may be given in evidence, as in cases of bankruptcy in England, and cases of infancy there and here. But such evidence will be applicable to the person of the individual obligor, after its execution; and not to the execution of the instrument, as it might defeat the whole action, by destroying the joint action. If it should appear

that one of the obligors executed the bond on a condition that made it void, the bond would be void. This is distinctly stated in 4 Cranch, 223.

In the case of a forged signature to a joint bond, the whole action on it would fail, on proof of the forgery. Not so when the action was several. A joint action, or a joint and several one, is defeated as to all when it is defeated as to one; 2 Mumford, 33; 2 Bin. Rep. 195; 3 Randolph, 316, 327, 334, 340, 351, 357; 360. In this case it was held that a defendant, or a party to a joint bond, could not be released by his co-obligor, as he is liable to costs, notwithstanding his release. 3 Leigh's Rep. 590.

These cases are in conformity with the rules of the common law. One defendant cannot give judgment against himself, to make himself a witness, and defeat the whole instrument.

3. A party to a suit cannot be called as a witness. He is incompetent because he is a party to the record. This is a general rule of the common law; and the only case in which such party can be a witness, is where his testimony will not affect the original contract. The rule which excludes a party to the record from giving evidence, is peculiar to the common law. In equity it is otherwise.

It is, therefore, only necessary to show that Salathiel Curtis was a party to the record. This is apparent on the face of the proceedings. He was so originally, and he continued to be so. As to the judgment entered against him having made him no party to the subsequent proceedings; it is contended, that the judgment was irregular. The practice in all courts is to continue the case as to a defendant who is in default, until the cause shall be determined against all. This shows the proceeding to have been irregular. The fact that the attorney of the United States made no objection to it, and afterwards issued execution on it, does not alter the case. It was irregular; it was void and could not be made valid. It could have been set aside. That Curtis suffered imprisonment does not cure the defects of the judgment.

The discharge of Curtis by the United States has no influence in this case. The discharge was not of his debts, but from the imprisonment; 5 Peters, 186; 1 Peters, 573; 1 Gallison, 82.

In any view which can be taken of the case, Curtis was not a witness. He was a party; to the suit a party named in the record; he had a dormant, but a substantial interest in its result, both as to the

amount of the recovery, and between the parties for costs, and for costs to the United States on a general judgment to the parties to the bond.

If there is any case in which the moral purposes of the rule will apply, it is this now before the Court, as public policy: the rule which excludes a party to an instrument from discrediting it, should be extended, emphatically, when a public officer who has given currency to an obligation, and has by it obtained the confidence and the funds of the government should not be allowed to defeat it. The government is obliged to act through agents, and will be exposed, extensively, to frauds, unless protected by the application of the principle to such cases. This is not a reason for asking the Court to vary an established rule of law, but it is a sufficient reason for asking the Court to extend a principle, declared by it to be the law in the case of the Bank of the United States v. Dunn, to a case which required it.

No decision of this Court has been given which allows a party to the record to be a witness. In New York, the Supreme Court has decided that the rule is inflexible, and he is always excluded.

Mr. Webster, for the defendant. The case in the court below was on a bond executed by five persons, four of whom were the sureties of the other for the performance of the duties of collector. When the trial took place the state of the pleadings was as follows. Two of the obligors were dead; one had made "a cognovit," and the United States had chosen to take a judgment against him and had proceeded to execution. He could not have compelled them to go on. The other two pleaded non est factum, and that the bond was an escrow. The case was tried on these issues; and before the trial, the witness, against whom judgment had been taken, had been released by the defendants. His testimony was admitted to prove that the bond was executed on a condition which was not performed.

The objections to the witness are, 1. That he repudiated the instrument. 2. That he had an interest in the result of the suit. 3. That he was a party to the record at the time of the trial, and as such cannot be permitted to testify.

As to the first objection, the cases of Walton v. Shelly, and Bent v. Baker, and all the subsequent cases apply this principle to negotiable instruments, and to them only. This is expressly said by this Court, in the Bank of the United States v. Dunn, 6 Peters, 55. No

decision in any court of the United States has extended the rule beyond negotiable instruments; and in England the same qualification has prevailed  The doctrine never applied to a bond.

The second objection is to the interest of the party in the suit.

To sustain this objection an attempt has been made to show that the whole proceedings against Salathiel Curtis, the principal in the bond, are void; and that a judgment cannot be taken against one co-obligor when it is not obtained against all who are joined with him. This position cannot be maintained. After the party has elected to proceed against one, he cannot afterwards treat the case differently. He has made the bond several as to him against whom judgment has been entered. Whether when the pleas are several, and one defendant pleads that the bond was an escrow, the plaintiff may not proceed against the other obligors, it is not necessary now to decide. The case cited from 4 Cranch, gives no support to the position for which it was referred to.

How can Curtis be interested in the result of this suit? A judgment had been entered against him, and the plaintiff had proceeded by execution. No other judgment can be obtained. The United States had made its election, and what other proceedings can be had against him. The judgment remains in full force; if it had been defective it should have been opened. Could any judgment be entered against him for costs in this suit, against Leffler?

Curtis is not a party to this suit. He is in no part of its pleadings named as a party. He could not have made a motion in the cause. He had no day in court. The suit was simply one against the defendants in error. In the case of Worrell v. Jones, 7 Bingham, 395, it was held that a party to the record may be a witness if he has no interest in the suit. Here Curtis had no interest; or if he had, it was, until he was released by them, an interest against the sureties.

Mr. Justice Barbour delivered the opinion of the Court.

This is a writ of error to a judgment of the circuit court of the United States, for the fifth circuit and eastern district of Virginia.

It was an action of debt brought by the United States, against Salathiel Curtis, Jacob Leffler, Isaac Leffler, Benjamin Biggs, and Reuben Foreman, in the district court for the western district of Virginia, upon a bond executed by Curtis as principal, and the other defendants as his sureties; conditioned that Curtis, who had been appointed collector of direct taxes and internal duties for the fifth

collection district of Virginia, had truly and faithfully discharged, and should continue truly and faithfully to discharge the duties of his office according to law, and should faithfully collect and pay according to law, all moneys assessed upon said district.

The breach charged in the declaration was, that Curtis had, during his continuance in office, collected the sum of 2992 dollars 12 cents, of internal duties, arising from said district, which he had failed to pay into the treasury department, according to law. To this declaration, the defendant Curtis, separately filed three pleas, the defendant Jacob Leffler two, and the defendants Jacob Leffler, Isaac Leffler, Reuben Foreman, and Benjamin Biggs, jointly, fifteen other pleas, at the rules held in the clerk's office. At the term of the court next ensuing, the defendant Curtis, the principal obligor, withdrew his pleas: and thereupon his attorney saying that he was not informed of any answer to be given for said Curtis, and that he had nothing to say in bar, or preclusion of the action, whereby he remained undefended, judgment was rendered against him for the debt in the declaration mentioned, to be discharged by the payment of 2336 dollars 87 cents, with interest, from the 17th of October, 1821, and the costs.

At the next term thereafter, the pleas filed by the other defendants were withdrawn, and they filed a general demurrer to the declaration; and the defendant, Jacob Leffler, filed two pleas, to wit, a general and a special non est factum; and he and the other defendants, that is, Isaac Leffler, Reuben Foreman, and Benjamin Biggs, filed several special pleas, jointly.

The plaintiffs joined in the demurrer, and time was given them to demur or reply to the other pleas. In this posture of the case, the judge of the court being concerned in interest in the cause, ordered it, together with an authenticated copy of the proceedings, to be certified to the circuit court of the United States, for the fifth circuit and eastern district of Virginia. This was accordingly done. In that court, the defendants, by leave of the court, filed the plea of conditions performed, on which issue was joined; and by consent of the parties, and with the assent of the court, the defendants withdrew all the pleas theretofore filed by them, except the two pleas by the defendant Jacob Leffler, of general and special non est factum; with the agreement that all the matters alleged in the pleas thus withdrawn, and all other special matters, of which the defendants should give the attorney of the United States reasonable notice, might be

given in evidence upon the trial, provided such matters would be admissible under any proper form of pleading: and leave was granted to the attorney of the United States, to amend his declaration. At a subsequent term, the defendants, by leave of the court, filed an additional plea, to which the plaintiffs demurred generally; which demurrer the court sustained and overruled the plea. The plaintiffs thereupon filed an amended declaration against all the defendants, including Curtis, against whom judgment had been rendered in the district court as before stated.

Upon this amended declaration and the pleas and agreement last stated, the cause came on to be tried in the circuit court at the November term, 1835, the death of the defendants, Biggs and Foreman, having been first suggested, whereby the suit as to them abated.

On the trial, the defendant, Jacob Leffler, to support the issue joined on his special plea of non est factum, offered the deposition of Salathiel Curtis, the principal obligor in the bond; to the reading of which the plaintiffs objected, upon the ground that the witness was interested in the event of the suit, and was therefore incompetent.

But it appearing that judgment had been rendered in favour of the plaintiffs against said Curtis, and that afterwards, and before the examination of the witness, the United States had sued out an execution upon said judgment against his body, which was duly levied upon him by the marshal, and that whilst he, the said witness, was in custody of the marshal, under said execution, to wit, in the month of May, 1834, he was by virtue of a warrant from the President of the United States, bearing date the 8th of May, 1824, duly discharged from custody, under the insolvent laws of the United States, he the said witness having complied with the requisitions of said laws: and it appearing moreover, that before the examination of the witness, Jacob Leffler and Isaac Leffler the only parties defendants in the suit then alive, had executed to said witness a release of all claim against him for any money or other thing which he might be liable to pay them, or either of them, by reason of any recovery or judgment that might be had against them, or either of them on said bond; and also for any costs incurred, or to be incurred by them, or either of them, by reason of any suit upon said bond; the court allowed the said deposition to go in evidence to the jury, who found a verdict for the defendants; the plaintiffs thereupon filed their exception, which brings before this Court the question whether the judg-

ment of the court below was erroneous, by reason of allowing said deposition to go in evidence to the jury?

In the argument, the counsel for the plaintiffs have taken three objections to the admissibility of the evidence. 1st. That the witness, being a public officer, bound to give bond with sureties, and having delivered over the bond in this case to the government as having been duly executed by all the obligors, who, from its face, seemed to have executed it, to allow the witness to prove that it had been executed as an escrow, by some of them, upon a condition which had not happened, would be to suffer him to allege his own turpitude.

2dly. That the witness was incompetent, because he was directly interested in the event of the suit.

3dly. That he was incompetent, because he was a party upon the record.

We will examine these objections, in the order in which they have been stated.

The first is, that the witness should not have been received, because his evidence went to prove his own turpitude. And in support of this objection, we were referred, in the first place, to the case of Walton and others against Shelly, 1st Term Rep. 296. It was, indeed, decided in that case that a party who had signed any instrument or security, (without limitation as to the character of the instrument,) should not be permitted to give evidence to invalidate it. It was said, that every man who is a party to an instrument gives credit to it; that it was of consequence to mankind, that no person should hang out false colours to deceive them, by first affixing his signature to a paper, and then giving testimony to invalidate it. And the civil law maxim, nemo allegans suam turpitudinem audiendus est, was relied on. This case was followed a few years after by that of Bent against Baker, 3d Term Rep. 27, in which it was said, that the rule must be confined to negotiable instruments; and in 1798, the case of Jordaine v. Lashbrook, 7th Term Rep. 601, overruled the case of Walton v. Shelly, even in regard to them; by deciding, that in an action by an endorsee of a bill of exchange against the acceptor, the latter may call the payee as a witness, to prove that the bill was void in its creation. And such is the doctrine which has since been held in England. In this Court, in the case of the Bank of the United States v. Dunn, 6 Peters, 51, it was decided that no man who was a party to *a negotiable instru-*

*ment,* should be permitted, by his own testimony, to invalidate it. The principle thus settled by this Court, goes to the exclusion of such evidence only in regard to negotiable instruments, upon the ground of the currency given to them by the name of the witness called to impeach their validity; and does not extend to any other case, to which that reasoning does not apply: the case of the Bank v. Dunn, then, would be sufficient to defeat the objection which has been made to the witness, although he executed the bond, and although it was the bond of a public officer.

The second objection is, that the witness was directly interested in the event of the suit.

This objection may be viewed in two respects. 1st. As it respects the interest of the witness arising from his liability over to his co-obligors who were his sureties. 2dly, As it respects his interest as being, as it is contended, a party upon the record, and as such, liable to a joint judgment with the other defendants, Jacob and Isaac Leffler.

In relation to the first of these aspects, it is certainly true, that in general, a principal obligor cannot be a witness for his co-obligors, who are his sureties in the bond sued upon, even although he be not a party; this is well settled, both upon principle and authority: amongst other cases, it was so decided by this Court in the case of Riddle against Moss, 7 Cranch, 200; upon the plain ground, that he is liable to his sureties for costs in case judgment should be rendered against them.

Now, although that was once the position of this witness, yet it was not such at the time he was examined; for it appears by the bill of exceptions, that before his examination, his sureties had executed a release, in the most ample form, of all claim against him arising out of their relation to him as sureties upon the bond, embracing every thing which could be recovered against them, including costs.

There is, then, no interest in the witness in the event of the cause arising from his supposed liability over to his sureties, the defendants.

The second branch of the objection relates to his being, as it is contended, a party upon the record, and as such, liable to a joint judgment with the defendants, Jacob and Isaac Leffler, in this suit. In this respect, the whole question resolves itself into the inquiry, whether he *is,* or *is not* a party upon the record; for it is conceded,

as it must necessarily be, that if he be not, then this branch of the objection must fail.

The argument to prove that he is a party upon the record is, in substance, this:—That the plaintiffs having elected to bring a joint action upon the bond, there could not be a several judgment against any one of the obligors; but that it must be a joint one, either *for* all, or *against* all; that therefore, the several judgment in this case against Salathiel Curtis was erroneous; and that notwithstanding that judgment, he is still liable to a joint judgment, together with the defendants, Jacob and Isaac Leffler, in the event of one being recovered against them.

The general proposition thus stated, that in a joint action upon a bond against several obligors the judgment must be joint against them all, is admitted to be true; we say the *general proposition*, because there are exceptions as well established as the principle itself. Thus says Sergeant Williams, 1 Saun. 207, *a.* note 2, where the defendants sever in their pleas, as where one pleads some plea which goes to his personal discharge, such as bankruptcy, ne unques executor, and the like, *and not to the action of the writ,* the plaintiff may enter a nolle prosequi against him, and proceed against the others. In the United States the principle has been extended further. Thus, in New York, in the case of Hartness v. Thomson, 5 Johns. 160, an action was brought against three upon a joint and several promissory note, and there was a joint plea of non assumpsit, and the infancy of one of the defendants was set up at the trial; it was held no ground for a nonsuit; but the plaintiff, upon a verdict found in his favour against the other two defendants, might enter a nolle prosequi as to the infant, and take judgment upon the verdict against the others. So in Massachusetts, 1 Pickering, 500, upon a joint contract and suit against two persons, one of whom pleaded infancy, it was held that a nolle prosequi might be entered against the infant, and the suit prosecuted against the other defendant.

And in this Court, in the case of Minors v. The Mechanics' Bank of Alexandria, a suit was brought against Minors and four others, his sureties, for the faithful discharge of his duties as cashier of the bank; the principal pleaded separately, and after judgment was given against the sureties on all their pleas, the pleas of the principal being, mutatis mutandis, the same as some of their pleas, the plaintiffs were allowed to enter a nolle prosequi against the principal; and no objection to the judgment appearing to have been made by

the sureties, such proceeding was held to be not an error for which the judgment could be reversed.

The Court, in reasoning upon that case, admitted that in a joint and several bond, the plaintiff ought to sue either all jointly, or one severally. They said, however, that the objection was not fatal to the merits, but was pleadable in abatement only; and if not so pleaded, it was waived by pleading to the merits. They said, therefore, if the suit had been brought against the four sureties only, and they had omitted to take the exception by plea in abatement, the judgment, in that case, would have been unimpeachable. They then inquired, whether the legal predicament of the case was changed by having sued all the parties, and subsequently entering a nolle prosequi against one of them? And if not in general, then, whether there was any difference where the party in whose favour the nolle prosequi was entered was not a surety, but a principal in the bond? The Court, after an elaborate examination of these questions, both upon principle and authority, came to the conclusion, "That where the defendants sever in their pleadings, a nolle prosequi ought to be allowed. That it was a practice which violates no rule of pleading, and will generally subserve the public convenience. That in the administration of justice, matter of form, not absolutely subjected to authority, may well yield to the substantial purposes of justice."

In arriving at this conclusion, the Court cited with approbation the two cases from New York and Massachusetts before referred to, and remarked, that the plea went not only *in personal discharge*, as in the case of bankruptcy, and the other pleas, before cited from Sergeant Williams' note, but proceeded upon a matter which established an original defect in the joint contract. This case clearly establishes these two propositions:

1st. That although in case of a joint contract, strictly speaking, the plaintiff must sue all, or one, yet if he does sue any intermediate number, and the defendants do not avail themselves of this, by plea in abatement, the objection is waived by pleading to the merits, and is not one which can avail them upon writ of error; and the reason which the Court gives, drawn from high authority, is, "That the obligation is still the deed of all the obligors, who are sued, though not solely their deed; and, therefore, there is no variance in point of law, between the deed declared on, and that proved. It is still the joint deed of the parties sued, although others have joined in it."

2d. Though the plaintiff should elect to bring a joint suit against all the obligors, if they sever in their pleas, and the bond be joint and several, he may enter a nolle prosequ: against one of them, even although his plea go to the action of the writ; it being the same with that of the other defendants, and take judgment against the other defendants, which cannot be reversed on error, where no objection to the judgment against them was made by those defendants at the time. The case which we have been examining bears strong resemblance to the one at bar.

In this case, as in that, the bond is *several* as well as *joint;* in this case, as in that, an action might have been maintained severally against the defendants; in this case, as in that, all the parties were retained, who had joined in their pleas, and between whom, there existed a right of mutual contribution. In this, as in that, the principal had pleaded separately from his sureties; finally, in this, as in that, the principal was severed from the record, and ceased to be a party. The cases differ only in this single particular, that in that case, he ceased to be a party, by the plaintiff's entering a nolle prosequi against him; whereas in this, he ceased to be a party, as we think, by the judgment which was separately taken by the plaintiff against him; which, in our opinion, under the facts of the case, severed him from the record to all intents and purposes.

The plaintiffs' counsel relied, with great emphasis, upon the cases of Taylor v. Beck, 3 Ran. 316, as being, as he contended, conclusive in their bearing upon the case at bar. Let us examine them. They were two actions on promissory notes negotiable at the bank, against the drawer and indorsers jointly, brought in that form by virtue of an act of assembly of Virginia. One of the defendants pleaded separately, and the others jointly. The defendant who had pleaded separately confessed a judgment; and at the trial, the other defendants offered to introduce him as a witness on their behalf; and the question was, whether he was not incompetent on account of interest? And it was decided that he was incompetent. Now, the first remark to be made upon that case is, that there was no release by the co-defendants, as there was in the case at bar. The court, however, thought, that as the action was joint, the plaintiff had a right to a joint judgment against all, for his debt, and all his costs; that the defendant who had confessed judgment, had no right to deprive him of this joint judgment, by having his cognovit actionem entered finally, *against the plaintiff's will,* whilst the cause was

[United States v. Leffler.]

depending on the pleas of the other defendants; they, therefore, considered him still a party to the record, and, consequently, an incompetent witness. The fact that the judgment in that case was *without the consent of the plaintiff*, is mentioned not less than four or five times by the judges, in giving their opinions. Thus in one place it is said, that W. Woodford had no right to deprive the plaintiff of his joint judgment, by having his cognovit actionem entered finally, *against the plaintiff's will.*

Again it is said, that the Court could not properly enter a final judgment upon his confession, *without the assent of the plaintiff,* until after the issues were tried as to the other defendants, &c. Again, they say, it follows, that if either of the other defendants had been discharged from the plaintiff's demand, in whole, or in part, Woodford (*the plaintiff having refused to take final judgment on the confession at the time it was made*) would have been entitled to avail himself thereof. In page 336, of that case, one of the judges holds this language: What effect had Woodford's confession of the plaintiff's action upon the question of his competency to give evidence for the other defendants? *The plaintiff refused to accept his confession, and to take judgment thereon.* It is not necessary to inquire, whether a proper and unimpeachable judgment might have been entered on this confession, separately, against Woodford, if the plaintiff had desired it. One case has passed this Court, in which such a separate judgment has been allowed, upon the agreement of the plaintiff and one defendant, and the cause proceeded in, against the other defendant: but the cause was not considered upon the point now under consideration. These several extracts show that the Court, although they did not in that case decide the point, yet laid great stress upon the fact that the judgment was *against the consent of the plaintiff;* and indeed that one case had passed the Court, where a judgment with his consent was allowed, though it passed sub silentio. It would seem then, that it is not at all certain but that the Court, if that fact had been in the case, would have considered the judgment, in the language of one of the judges, to be unimpeachable; especially when we find them asserting, that it was the right of the plaintiff to have a joint judgment, but it is competent to a party to waive that right, as he may all others; and nothing can be a more conclusive waiver, than to take a separate judgment, of his own will, against one of the defendants. But it is unnecessary to inquire, whether, if judgment had been rendered

against the defendants, Jacob and Isaac Leffler, in this case, they could have reversed it upon a writ of error, notwithstanding the plaintiffs had, by their own consent, taken a separate judgment against their principal Salathiel Curtis. Howsoever that may be, we are of opinion, that there is no ground on which these plaintiffs in error can reverse the judgment against them. They themselves have taken with their own consent, a separate judgment against Curtis; upon that judgment they issued a ca: sa. by virtue of which his body was taken; under the insolvent laws of the United States, he was discharged from imprisonment; those laws declare, that the judgment shall remain good and sufficient in law, and may be satisfied out of any property that he then had, or might thereafter acquire; and the judgment under which all this has been done was rendered some ten or eleven years before the witness was examined. Let it be conceded. for the purpose of this part of the argument, that the judgment was ever so erroneous, can it be reversed? We think clearly that it cannot; and this for many reasons—1. It was taken by the plaintiffs themselves, with their own assent; 2. They have carried it into execution, and as far as they could, reaped its fruits; 3. The period within which a writ of error could be sued out, has been twice barred by lapse of time; 4. By the very terms of the law under which Curtis was discharged from imprisonment, the judgment is declared to remain in force, and that the plaintiffs have a right to satisfaction of it out of his property; 5. Curtis himself is barred, not only by his availing himself of the benefit of the insolvent law, which declares the judgment to remain in force, but also, by lapse of time, from reversing it, if he ever could have done so. We think, therefore, that he is as completely severed from this record, and has as entirely ceased to be a party, as if he had never been sued. Let us for a moment trace the consequences of considering him as yet a party upon the record. If this were so, then it would follow, that another judgment might be obtained against him; but we have seen, that there is already one against him, unreversed and irreversible; if then another could be obtained, we should have an anomaly, never before heard of in the law; that is to say, that there should be two subsisting judgments, in full force, at the same time, in favour of the same plaintiffs, against the same defendants, founded on the same original cause of action, and on both of which he would be liable to execution. This cannot be. If there be any one principle of law settled beyond all question, it is this, that whensoever a

[United States v. Leffler.]

cause of action in the language of the law, transit in rem judicatam, and the judgment thereupon remains in full force unreversed, the original cause of action is merged and gone forever.

We have anticipated the last objection in our previous reasoning, by showing that the fact fails, because the witness is severed from the record, and is not a party.

On the whole view of the case, we think that the witness was competent; that therefore the judgment of the circuit court was correct, and must be affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Virginia, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed.