Young, Justice, delivered the opinion of the court: This was an action commenced by petition and summons, at the March term of the Morgan circuit court, 1839, by the plaintiff, Brooks, for the use of McDougall, against the defendants, McKinney, Cloud, Brockenbrough, Lamborn, Douglass, and McConnell, as joint makers of a promissory note, for the sum of $150, bearing date the 26th of August, 1837, and payable six months after date. Brockenbrough alone was served with process at the first term, and the summons returned not executed as to the other defendants, by order of the plaintiff’s attorney. On the calling of the cause at that term, the plaintiff moved the court for judgment by default against Brockenbrough, who had failed to plead to the action; and Brockenbrough at the same time entered a cross-motion to dismiss the suit, which was overruled. He then moved the court to continue the cause, for the reason that the process had not been served on his co-defendants, by order of the plaintiff’s attorney. This motion was sustained, and the plaintiff’s motion for judgment by default overruled, The plaintiff excepted to this opinion of the court, but the exception does not appear to have been preserved by the bill of exceptions filed in the cause. The plaintiff afterwards sued out an alias petition and summons against the other defendants, which was returned executed upon all. At the trial of the cause, McConnell filed a separate special plea, personal to himself, and the plaintiff having failed to reply to the same, he obtained judgment for his costs. The other defendants filed a plea of payment, upon which an issue was taken by the plaintiff, and the cause submitted to a jury. After the plaintiff had closed his testimony, the defendants called upon McConnell as a witness to sustain their plea of payment. McConnell objected to be sworn as a witness, on the ground of his being a party in interest; and upon being sworn upon his voire dire, by direction of the court, testified that “he was a party in interest in the suit, and that the beneficial interest in the note was in him, and that if the action failed, he would be a loser therebyand thereupon insisted upon his privilege of being exempted from testifying in chief against his interest. The court disallowed his objection, and required him to be sworn in chief, as a witness for the defendants; and his evidence went to the jury. The plaintiff then submitted to a nonsuit, and the defendants had judgment for their costs. ■ [*312] An exception was taken to the opinion of the court, by the plaintiff, and the following are assigned as causes of error, to wit: First. The court erred in continuing the cause at the first term, on the motion of Brockenbrough, one of defendants, for the reason that the process was not served on his co-defendants; and, Second. In requiring McConnell to testify. In regard to the first error assigned, it is only necessary to say, that this court has already decided in several cases, that the granting (and until the passage of a recent statute, the refusing also) of continuances is in the general, a matter of sound legal discretion, and that the decision of the court in such cases cannot be assigned for error. Vickers v. Hill et al. 1 Scam. 307; Crain v. Bailey et al. 1 Scam. 821. As to the second cause assigned for error, two questions present themselves for the consideration of the court: first, Was McConnell disqualified from testifying as a' witness for the defendants, by reason of his being a co-defendant, and as such a party to the record ? and, secondly, Was he entitled to exemption, on account of his beneficial interest in the note sued upon, 'from testifying against his interest ? Upon the first point, I do not think he was at all disqualified, from the circumstance of his having been a party defendant on the record. He had severed from his co-defendants in his defence, by pleading special matter personal to himself, and had judgment in his favor for his costs. The cause as to him had passed to final adjudication; and for all the purposes of testifying as a witness for his co-defendants, if not otherwise disqualified or privileged, he had become severed from the record. United States v. Leffler et al. 11 Peters 86; Smith v. Moore, 3 Scam. 464; Greenl. Ev. 400. The remaining question is one of more difficulty, on account of the various conflicting decisions upon the subject, both in England and the United States. The plaintiff in error relied mainly upon the following authorities as sustaining the position that the party in interest, although not a party to the record, cannot be compelled to testify against his interest The King v. The Inhabitants of Woburn, 10 East 395; Mauranr. Lamb, 7 Cowen 174; Hawkins v. Perkins, 1 Strange 406; Title v. Grevett, 2 Ld. Raym, 1008; Greenl. Ev. 398. The case in 10 East, although cited by Woodworth, J., as authority in the case of Mauran v. Lamb, in 7 Cowen 176, does not appear to me to be at all analogous either to that case, or to the case under consideration. The case referred to was an appeal by the church wardens and overseers of the poor of the parish of St. Alban, in the county [*313] of Hertford, against an order of the justices for the removal of Mary Brown, widow, and her children, from the parish of Woburn, in the county of Bedford, to St.Alban. John Hil-liard, an inhabitant of the appellants’ parish of St. Alban, and rated and paying the poor rates of the said parish, was called as a witness, on the part of the respondents, and refused to give evidence. The sessions decided that he was not compellable to give evidence ; from which opinion an appeal was prosecuted to the King’s Bench. Lord Ellenborough, C. J., delivered the judgment of the court. The question was, whether a rated inhabitant of .the appealing parish could be called upon and examined as a witness, when called upon by the respondents, against his interest. His lordship said : “ The parties appealing before' the court of quarter sessions, as appeared by the proceedings returned to this court, were the church wardens and overseers of the parish of St. Alban, which at first seemed to afford an answer to the objection, that the inhabitant proposed to be called was not a party to the proceeding; but in reality the appeal is by them on behalf of the inhabitants of the parish, who are all of them paying to the rates, the parties grieved and are all directly and immediately interested in the event of the proceeding, by which the maintainance of the pauper is to be fixed on them, or removed from them, as well as the costs. It is a long established rule of evidence, that a party to the suit cannot be called upon, against his will, by the opposite party, to give evidence.” Here it will be perceived, by the declarations of liis lordship, that Hilliard was a party to the suit, and not merely a party in interest, which is a very different relation. The title of the suit is “ The King v. The Inhabitants of Woburn;” the person called as a witness was one of those inhabitants, and as such, Lord Ellenborough said, was a party to the suit; the appeal being on behalf of the inhabitants of the parish. If, as his lordship, at first supposed, Hilliard, although interested, was not in reality a party to the suit, it is clearly inferable, from the language employed, that his decision would have been very different. Mr. Greenleaf, in commenting upon this subject in his excellent treatise on Evidence, remarks : “ Whether corporators are parties within the meaning of this rule is a point not perfectly clear. Corporations, it is to be observed, are classed into public, or municipal, and private corporations. The former are composed of all the inhabitants of any of the local or territorial portions into which the country is divided, in its political organization, such as counties, towns, boroughs, local parishes, and the like. These corporations sue and are sued by the name of ‘the inhabitants of’ such a place ; each inhabitant is directly liable in his person to arrest, and in his goods to seizure and sale,, on the execution which may issue against the collective body by that name; and, of course each one is a party to the. suit. Being parties, it would [*314] seem naturally to follow, that these inhabitants were neither admissible as witnesses for themselves, nor compellable to testify against themselves.” Greenleaf’s Ev. 380-81. The case of Mauran v. Lamb, in 7 Cowen, 174, is admitted to be a case in point, if it may be regarded as authority for the plaintiff. That was a case in assumpsit, where the plaintiff, as bearer of a check on the bank of North America, brought suit against the defendants, as drawers, for $1,912.02, payable to No. 25 or bearer. It was admitted, on the trial, that the plaintiff had no interest in the check, but sued for the benefit of Mrs. Remsen, to whom the check belonged, with her consent. Among other witnesses, the defendant offered Mrs. Remsen, the person for whose benefit the action was brought, but on her claiming the privilege not to testify against her interest, the court excused her from giving evidence. On a motion for a new trial, the court decided, per Wood-worth, J., on the authority of the case of the King v. The Inhabitants of Woburn, 10 East 395; Title v. Grevett, 2 Lord Raymond 1008; and Appleton v. Boyd, 7 Mass. 131, that she was not bound to testify against her interest, and denied the motion. The decision I hold to be against the current of authorities on that subject. I have already shown that it is not analogous to the case reported in 10 East, for the reason that Mrs. Remsen could not be considered as a pa,rty to the suit, as was the case of Hilliard, in the King v. The Inhabitants of Woburn. In the case of Title v. Grevett, 2 Lord Raymond 1008, Holt, C. J., said: “ A man that conveys lands may be a witness to prove that he had no title, because that is swearing against himself, but he is not compellaable to give such evidence.” This whole case, as reported, does not embrace more then eight or ten lines ; contains no reasoning or reference to authorities ; was made during the reign of Queen Anne, in 1703 ; and does not comport with the weight of the more modern English authorities on that subject, even if it may be considered in any respect similar to the case before the court. The case of Hawkins v. Perkins, 1 Strange 406, is reported as anonymous, and as having been decided at Guildhall, before Pratt, C. J., about the year 17 20. The entire case is reported as follows : “ Case upon a note. The plaintiff called one of the defendants’ bail to prove the hand, and whether he was bound to give evidence was the question. The chief justice said, if he was a subscribing witness, he would oblige him, but otherwise he would leave him to his liberty.” In Greenleaf’s Ev. 398, the rule is laid down as stated by the plaintiffs’ counsel, and the case of Mauran v. Lamb, 7 Cowen 174, cited in support of it. This case is also referred to as authority in 1 Phil. & Am. on Evidence 158, note 3. The case of Mauran v. Lamb was decided by Wood- [* 315] worth, J., in the year 1827. The judge says, in delivering his opinion, that “ it is well settled that the plaintiff on the record cannot be compelled to give testimonyand there.fore infers that Mrs. Remsen, who was only a parry in interest, and not plaintiff on the record, was not compellable to give testimony. He then cites as authority Bain v. Hargrave, K. B. 35th Geo. III., M. S. cited in Peake’s Ev. 184; in which Lord Kenyon held, that he would not oblige a witness to answer any question that .might tend to charge him with a debt; that a man might come and charge himself voluntarily with a debt; but could not be compelled to charge himself civilly, any more than to make himself liable to a criminal prosecution; and Raynes v. Towgood, 37th Geo. III., M. S. Ibid., in which his Lordship said, he would not compel a witness to give evidence which would subject him to a pecuniary penalty. He then cites the case in 10 East, and 2 Lord Raymond, and concludes with the case of Appleton v. Boyd, 7 Mass. 131. 1 will now proceed to show that this case of Maman v. Lamb, which appears to be a leading case in some of the modern elementary treatises on the subject of evidence, is against the weight of authorities, both English and American, and tends to establish a rule, which, in its operation, in many cases would go far to defeat the ends of justice. In the case of Appleton v. Boyd, above referred to, it was held by Parsons, O. J., that Parker who had sworn that he was a partner in trade with Appleton, the plaintiff, and that he was jointly and equally interested with him, in the event of the suit, could not be compelled to testify against his interests. This question afterwards, in the year 1830, underwent a very elaborate examination in the supreme judicial court of Massachusetts, where the cases of The United States v. Grundy, 3 Cranch 344; Webster v. Lee, & Mass. 334; and the ease of Appleton v. Boyd, were severally reviewed, and determined to be against the current of authorities upon that subject. Shaw, C. J., who delivered the opinion of the court in the case of Bull et. al. v. Loveland, 10 Pick. 9, said, that this question had been the subject of much discussion, and difference of opinion among eminent judges, and those of the greatest experience in nisi prim trials, both in England and the United States. That the case decided by Chief Justice Marshall, in 3 Crancli, “ that a man was not bound to testify against his.interest in a civil case, was before the discussion in England, and the opinions of the judges in the House of Lords, growing out of questions raised in Lord Melville’s trial. That the case of Webster v. Lee did not call for the expression of an opinion upon the question, whether the witness could be compulsorily required to testify against his will. And that when the same point again came before Chief Justice Parsons, in Appleton v. Boyd, at nisi frius ; upon which he ruled that a witness could not be [* 316] required, without his consent, to testify against his own pecuniary interest, the question was .not noticed or argued by the counsel, on either side, and that the judge cited no authority in support of his opinion. That this subject underwent much discussion pending the impeachment against Lord Melville, in 1806, upon which occasion the question was put to the judges by the House of Lords. That the question was presented in two or three different forms, slightly varying in terms, but it was substantially the same in each. That eight of the judges and the Lord Chancellor were of opinion that the witness was bound to answer a question, although his answer might render him liable to a civil action; the other four judges expressing a contraiy opinion. That in order to remove the doubts, which such a difference of opinion, among eminent judges implied, the act of 46th Geo. III., chap. 37, was passed, declaring that a witness cannot by law refuse to answer a question relevant tp the matter in issue, the answering of which has no tendency to accuse himself, or to expose him to a penalty, or forfeiture of any nature whatsoever, by reason only, or on the sole ground, that the answering of such question may establish, or tend to establish, that he owes a debt, or is otherwise subject to a civil suit. That Lord Erskine, then Lord Chancellor, stated, that notwithstanding some difference of opinion among high authorities, he considered the law so far precise, clear, and perspicuous, that ho new law was necessary, otherwise than in the form of a declaratory law; and that in this suggestion he was countenanced by Lord Eldon, who was not then in judicial office. He then refers for authority, to 1 Phillips’ Ev., Am. ed., 208; Peake’s Ev., 3d edition, 193; 1 Hall’s Law Journal 223; 1 Starkie’s Ev. 135; 4 Harris & Johns. 348; 2 Harris & Gill 147; 4 Sergeant & Rawle 397; 5 Pick. 448; and then comes to the following conclusion: “ On the whole we think the weight of authority is in favor of the rule, that a witness may be called and examined in a matter pertinent to the issue, where his answer will not expose him to a criminal prosecution, or tend to subject him to a penalty or forfeiture, although they may otherwise adversely affect hi^s pecuniary interest.” So that the rule of evidence on this subject, in Massachusetts, may now be considered as established adversely to that laid down by Chief Justice Parsons, in the two cases referred to, which, notwithstanding the high character of that eminent judge, cannot at this day be regarded as authority. In the case of Le Roy, Bayard of Co. v. Johnson, 2 Peters 194, Mr. Justice Washington, who delivered the opinion of the court, said: “The general rule of law in relation to witnesses, who are interested in the event of the cause, goes no farther than to exclude them from giving testimony in favor of that party to whom their interest inclines them. If they stand in point of [*317] interest, indifferent between the litigating parties, or if they testify against, their interest, the reason of the rule which-excludes their testimony no longer exists.” In Peake’s Ev.-160, the writer says, after reviewing a great number of cases on this subject, “ I shall conclude this section by observing, that a man who is interested in the event of a suit, is objectionable only when he comes to prove a fact consistent with his interest; for if the evidence he is to give be contrary to his interest, he is the best possible witness that can be called, and no objection can be made to liim by the party in tire cause.” In the case of Banerman et al. v. Radenius, 7 Term R. 664, which was determined in the court of King’s bench, in the 38th year of George III., it was contended, on the trial, for the purpose of avoiding proof of the admissions of Banerman & Co., the nominal plaintiffs, that Yan Dyck & Co. were the real parties in interest, and ought not to be concluded by such evidence, as Banerman & Co.- had only acted as their agents. Lord Kenyon, chief justice, remarked, that it was said by a very learned judge, Lord Macclesfield, towards the beginning of the 17th century, that the most effectual way of removing land marks, would be by innovating upon the rules of evidence. That he had been in the profession more than forty years, and had prac-tised both in courts of law and equity ; and that if it had fallen to his lot to form a system of jurisprudence, whether or not he would have established two different courts with different jurisdictions, and governed by different rules, it was not neeessaryf'or him to say. That it was wiser to act in conformity with settled principles, than to leave it to the judges of the law, to relax from those certain and established rules by which they are sworn to decide. If, said his lordship, the question that has been made, in the case which was then before him, had arisen before Sir Matthew Hale, or lords Holt or Hard tvicke, he believed it never would have occurred to those sitting in a court of law, that they could have gone out of the record, and considered third persons as parties in the cause. Here, he continued, it has been contended that Banerman & Co. are to be laid out of the cause entirely, and we are desired to substitute Yan Dyck & Co. as plaintiffs in their room. That he could not conceive on what ground it could be said, that Banerman & Co. may be considered not as parties in the cause for the purpose of rejecting their' admissions, and yet as the parties in the cause for the purpose of preventing their being examined as witnesses,” etc. The result was a non-suit on the part of the plaintiffs, as in the case now before this court. Ashhurst, Grose, and Lawrence, Justices, delivered separate opinions, agreeing in all respects with that of the chief justice. The question presented by the bill of exceptions in the case of Taney v. Kemp, 4 Harris & Johns. 348, was : Shall [*318] a witness be compelled in a court of law to answer a question touching the issue in the cause, where such answer may expose him to a civil action ? Dorsey, justice, who delivered the opinion of the court, said that the witness ought to fie compelled to testify, provided his answer would not subject him to a criminal prosecution, or to a penalty or forfeiture. That to permit a witness to shelter himself, under such a plea, would have a tendency greatly to obstruct the cause of justice. .And in the case of Stodderts’ Lessee v Manning, 2 Harris & Gill 157, the court below refused to the plaintiff the benefit of Thomas Burgess’ testimony, on the score of incompetency, on account of his supposed interest in the event of the suit. Earle, justice, who delivered the opinion of the appellate court, said, we think their honors did wrong in rejecting his testimony. That Burgess was called to swear against his own interest, and that it was not for him, as a witness, to excuse himself from giving evidence on that ground. That since the case of Taney v. Kemp, above cited, it may be laid down as a rule of evidence, that no person shall be exempted from giving testimony on the ground that his answer may affect his interest. That although the effect of his testimony, in establishing a particular boundary, might deprive him of a part of his own land, or subject him to the plaintiffs’ action for a trespass, he was equally within the operation of the rule ; and in neither case entitled to exemption from giving evidence in the cause. In the case of Sarah Devoll v. David M. Brounell, 5 Pick. 447, Brounell, the defendant, who was trustee of Benjamin Devoll, was called upon by the plaintiff, as a witness to prove that the bill of sale executed to him was fraudulent as against creditors, and that he had secreted' the property. He refused to answer. Per euriam : We think he is bound to answer the questions, although he may thereby charge himself. The constitutional provision, that no subject shall be compelled to furnish evidence against himself, does not relate to questions of property. In 2 Phillips’ Ev., Cowen & Hill’s Notes, 81, note 81, it is said, “A person interested in the event of the cause is competent, when his interest is adverse to the party calling him and numérous American authorities are cited in support of this doctrine. In 2 Blackf. 462, it is decided, that to exclude a witness on the ground of interest, he must appear to be interested in favor of the party who calls him. This case appears to have been decided mainly on the authority of Oxenden v. Penerice, 2 Salk. 691, where it was determined that “the legatee in.a will is not a competent witness at common law to support the will, because it is his interest to support it; but he is a good witness to disprove the will, for he then swears against his interest.” In 3 Littell 222, 226, Carroll, as assignee of Kemple, [*319] who was assignee of Raybourn, who was assignee of Kise, brou^ht^suit against Gorham. On the trial the court ruled that Kise, although the payee of the note, if called by Gor-ham, the maker, to prove the consideration usurious, was obliged to testify, although against his own interest.' In 1 Bibb, 154, it ■was decided that a witness interested in a suit, by baying agreed to pay part of the costs, may be examined, when called by that party to whom the interest of the witness was opposed. In the case of Robinson et al. v, Neal et al. 5 Monroe 214-15, Judge Wills, who delivered the opinion of the court, said : “ The last question we shall notice arises from the rejection of a witness by the court below, when offered by the defendants, to depose on trial. There was a demise in the declaration to the fictitious lessee by Elisha Colé. The witness offered stated that he was interested in favor of the plaintiff’s recovery, and expected to get the benefit of the recovery if he did, and that it would be compelling him to depose against his interest if .compelled to depose at all; that he was the person intended to be described in the declaration, as a lessor, by the name of Elisha Cole; but that his name was not Elisha, but Elijah, Cole ; and that he knew of • no person by the name of Elisha Cole.” The court below refused to permit him to be sworn in chief, to which the defendants excepted. That this witness could not be excused on the score of interest in the controversy is well settled. It takes an interest, which, if he should depose, would subject him to penal proceedings, to excuse a witness, as held by this court in Gorham v. Carroll, 3 Littell 221. Subjecting the witness to a loss by civil suit is not sufficient to excuse him from telling the truth. The last case I will refer to, although many others might be cited in support of this doctrine, is the case of Lowney v. Perham, 20 Maine 240. Perham drew a bill of exchange, dated October 5, 1836, upon Tainter, for $3000, payable to his own order, at the Suffolk Bank of Boston, nine months after date, which bill was endorsed by Perham and one Treat. The bill was protested for nonpayment, Lowney ’became the holder, and brought suit upon it against Perham. On the trial the defendant called one Alfred Johnson to prove “ whether the plaintiff did not inform him how much he gave for said draft, and what it was.” The witness declined answering, on the ground that he was interested in the bill, haying been a joint purchaser of it with the plaintiff. The court below decided that Johnson was not bound to answer the enquiry, and he did not. Shepley, Justice, who delivered the opinion of the appellate court, said that the inferior court might properly exclude the testimony of Johnson as irrelative on another ground, but not on account of his interest in the suit. That although Johnson was beneficially interested in the recovery of the money, he could not be regarded as a party [*320] to the suit. It seems to me that these authorities, when taken together, clearly establish the doctrine that a person cannot be excused from testifying against his interest, unless he is a party to the record. His being a party interested in the recovery only, as in the case of McConnel, will not be sufficient to entitle him to exemption against the general rule. If this kind of evidence were privileged the real party in interest might frequently obtain an advantage over a defendant who might have made the contract with his agent, by bringing the action in the name of the agent, as nominal plaintiff, and thereby deprive the defendant of his evidence, and then upon the trial refuse to give evidence himself on account of his interest in the suit. By commencing suits in this-way, in the name, or for -the use of persons in no way interested in the cause of action, set-offs may be prevented, the direct payment of costs avoided, and if the secret interest should be successfully concealed during the progress of the suit, the result might be very different, in many cases, from what it would be, if the names of the real parties in interest were upon the record. A bankrupt, for instance, might, in this way, through the agency of a confidential friend, conceal a portion of his choses in action, and commence, and prosecute suits for his own benefit and to the prejudice of his creditors, after an assignment of his effects. It is against the policy of the law, therefore, as it is against private right, to encourage or sanction secret trusts between parties, in all cases where the courts can properly interfere to prevent them. Nor should it be permitted for a person in this way to do by another that which he could not do by himself. Now, suppose this suit had been commenced in the name of Brooks for the use of McConnel, or McConnel had taken an assignment and commenced it in his own name, could it have been sustained ? Could he, as defendant, have filed the plea that he did and then have taken judgment against himself, as plaintiff, for his costs ? It is only necessary to state the proposition to show its absurdity. But it may be said that after McConnel had discovered his interest upon voire dire the defendants might have availed themselves of his testimony by bill of discovery, and would therefore have had no reason to complain if he had been exempted from testifying orally in court. But is this so, even if it should be admitted that a bill of discovery might be used against a party in interest who is not a party to the record ? A jury had been empaneled, and the cause was in progress of trial, when McConnel was called upon to testify. Would the court, at this stage of the proceedings, have arrested the trial, discharged the jury, and continued the cause, for such purpose ? I presume not. But [* 321] suppose a continuance, under such circumstances, could have been obtained by the defendants, and an opportunity thereby afforded to file a bill of discovery, of what possible advantage would it have been to McConnel thus to have disclosed the facts by answering such a bill, rather than by testifying, as a witness, in open court ? On the contrary, it appears to me that the interest of a party thus situated would be best promoted, in the general, by testifying orally in court; for then all his evidence, as well that which made for him, as against him, would go to the jury; while his answer to a bill of discovery, if unfavorable to the party seeking it, might not, at his election, go to the jury at all. With this view of the case I am instructed, by a majority of the court, to give it as our opinion, that if the party in interest is not also a party to the record, he may, at the instance of the opposite party, be compelled to testify as a witness against his interest, provided his answers do not subject him to a criminal prosecution, or to a penalty or forfeiture. We therefore think that the circuit court decided correctly, under the circumstances, in requiring McOonnel to be sworn and examined in chief as a witness.