Avert, J.-
When this cause was brought on for trial in the court of common pleas, a number of separate issues between the parties appeared on the record. Amongst them was one upon the plea of infancy, filed in behalf of Christopher Mor ■ ningstar, and another upon the plaintiff’s second replication, averring a subsequent promise by the infant after he became of age; our statute allowing, on leave given by the court, several replications to the plaintiffs, and several rejoinders to defendants. After the testimony upon the whole case on both sides was closed, the defendant, George Morningstar, moved for a separate verdict, on .the plea of infancy, put in by Christopher, and upon the replication of a subsequent.promise, for the purpose of using him as a witness, in case a verdict in his favor should be returned by the jury. The motion was granted by the court, and after a verdict was returned by the jury on the defense of infancy, in favor of Christopher, a judgment was rendered and he was permitted to appear and testify as a witness for George. It is alleged by the plaintiff that there was error in this proceeding on the part of the court, both in sending the cause to the jury and in allowing the party who had obtained a verdict, to become a witness.
Cases have not been found precisely like the present, either amongst the authorities cited by the counsel, or those which have come under the observation of the court; and of the numerous decisions .upon the subject, not all of.them, by any means, are found to be in harmony with each other. But there are established principles, and some reported decisions, bearing upon the questions involved, which have led the court to a determination of the case, that is to their own mind satisfactory.
Two issues were submitted to the jury in the court of common pleas, one confined to the infancy of the defendant, and the other to the promise alleged to have been made by him after he was of age.
When the pleadings assume the form which they took in this case, they may, it is true, .occasion greater delay and inconvenience than can ordinarily occur under the single plea of infan *584 cy. But if such an objection alone is to be deemed sufficient for denying the leave to take a separate verdict, the plaintiff having a right to reply a subsequent, promise, can put the two issues upon the record, and thus always defeat the effort to make a witness of the infant. The only question raised in the case by this branch of the pleadings, is in effect whether as to one of the defendants the action is barred by his infancy; and the inconvenience suggested as a consequence of granting the leave was properly regarded by the court as not a sufficient cause for refusing the motion.
This defense, upon which the jury were directed to pass, was •one which could operate only to the personal discharge of the party pleading it, and not in bar of the whole action. There was no denial by the infant of the execution of the contract on which the action was prosecuted, either in behalf of himself -or his co-defendant. And this defense, if successful, while it might entirely discharge him from all liability, and so deprive him of all actual interest in the controversy, instead of operating to the apparent benefit of the other defendant, might leave him to -pay, without aid or contribution, the whole of the judgment, should there be a recovery by the plaintiff.
The' plea of bankruptcy is of the same description with that •of infancy, a defense going merely to the personal discharge of the party relying upon it'; and when the certificate has been regularly obtained without fraud, it constitutes a perfect protection to the bankrupt, both against the demand and costs of the suit, and usually against all other claims growing out of ■that cause of action.
The plea of coverture also presents a defense of the same ■character, being personal in its results to the party pleading it.
Now as to these several persons, in an action on a contract in executing which they had united with others, when they are not named as defendants, or not served with process, and therefore not parties to the record, they are all competent witnesses for either party unless interested in the event of the suit. In the case of bankruptcy, when that ■ plea is put in, it is estab *585 listed, according to numerous authorities, and is the settled law in England as well as this country, that the plaintiff may enter a nolle prosequi as to the bankrupt, (who is thereby discharged from all liability upon the record,) and then proceed with his cause to trial and judgment against the remaining defendants Upon the trial against them, the bankrupt, if not shown by evidence to be interested, may be a witness for either party. In respect to the plea of infancy, however, the English rule, according to some of the authorities, has not been the same, but instead of allowing a nolle prosequi, has required the plaintiff to go out of court, and to commence his action anew against the adult defendants. Still such is not admitted to be, without dispute, the English rule. But should that rule, according to the better opinion, be found to prevail in the courts of England, it is certain that a different practice has been adopted in many of the courts of this country, one which is supported by apparently sound reasoning, and which is strictly analogous to the practice upon the plea of bankruptcy. Upon the subject of these personal defenses and the right of the plaintiff to enter a bolle prosequi in all of them, see Greenleaf’s Evidence, 2d edition, 424; Noke v. Ingham, 1 Wilson’s Rep. 89; 1 Tidd’s Prac. 682; 1 Saunders Rep. 207; Woodward v. Newhall, 1 Pick. Rep. 500; Hartness v. Thompson, 5 John. Rep. 160; Pell v. Pell, 20 Johns. Rep. 126; Miner v. Mechanics’ Bank of Alexandria, 1 Peters’ Rep. 74; Affalo v. Fourdriner et al., 6 Bing. Rep. 306.
The plaintiff in this case had the right, if he had chosen to exercise it, of entering a nolle prosequi as to Christopher Morningstar, after discovering the plea of infancy upon the record, instead of making up an issue upon that plea or upon the alleged subsequent promise. Had he done so, his cause could have proceeded against the remaining defendant without objection. Christopher Morningstar could then have been improved as a witness in behalf of George, unless disqualified by some liability created after he was of age.
*586 The plaintiff, as it is believed, had the option to commence-in the first instance, against George, and omit the name of the infant; he had the privilege, after having commenced against both, upon finding a plea of infancy, to cease proceedings against the infant, and go on with his cause against the other. In either case, he could, by his own act, make the infant a competent witness for himself; and by the same act, the infant, in. either case, would become a competent witness for - the other defendant. Now, as a plaintiff has not; in a ease like this, the legal- right-.to judgment against the infant, and.as to him has-the privilege of discontinuing his suit without prejudice to himself; and then making .use of him as a witness, it would seem-that the defendant ought to have a corresponding privilege of removing the infant’s name from the record, for the purpose o£ using his testimony; especially when it can be done without the-violation of principle, and without- too great an interruption or inconvenience in the progress of the trial. It is the practice in actions for a tort, when there is no evidence against one of the defendants, to direct a separate verdict as to him, and upon the-return of a verdict in his fayor, to admit him as a competent witness for the other defendants. There the sole object-of taking a separate verdict is to render the defendant a competent witness. If the rights of the parties upon a plea of infancy filed,, be as above supposed, there might, in such case, exist the same reason for taking a separate verdict, as in an action of tort. No case, however, is found in the great number examined, where this has been done, except under some provision of a statute seeming to give countenance to it; as, for instance, where in aa action on a contract, a recovery has been authorized against a part of several defendants sued, and a recovery at the same time in favor of thp rest. In a case in 7th -Taun. 607, the counsel for part of the defendants moved that a verdict be taken for the bankrupt defendant, in order to make him an admissible witness, but Park, I., said that he did not feel warranted in establishing a new precedent in the ease. And perhaps it was once, and even after the time when the decision was made, generally held by the English courts, that upon a plea of per- ‘ *587 sonaBprivilege, the defendants were not entitled to a separate verdict, for the purpose of qualifying the party whose discharge was sought, to become a witness. There is, however, a later case, Bate and another v. Russell and others, 22 Eng. C. L. Rep. 327, which is in principle like the one under consideration. The action was assumpsit against several defendants, and upon the plea of bankruptcy being pleaded by one of them, a motion was made for leave to take a separate verdict for him." The court decided in the case, that where a defendant put in a plea,' operating only in his personal discharge, a verdict might be taken for him on that plea, and he be then examined as a witness for his co-defendants; and the motion was granted. Park, J., saying, in allusion to certain former decisions, that those cases were no longer authorities directly in point; the bankrupt law, with reference to the costs, not being exactly what it had been.
Upon a view of the authorities, and the reason of the case, we are all of opinion, that in permitting a separate verdict to be taken in behalf of Christopher Morningstar, and then receiving him as a witness for George, the court of common pleas did not commit any error.
It is further urged for the plaintiff, that though the proceedings of the court of common pleas, in permitting the infant to testify, may not be held erroneous for the causes above considered ; yet there was error in admitting him as a witness, because his name appeared upon the note in suit, as one of the makers. A multitude of decisions are found upon the point thus raised, and many of them in direct conflict with others which had been made upon the same question. The reason for this last mentioned objection is not that the witness is interested, or that he is one of the parties upon the record; but that he is inadmissible on the grounds of public interest and the public convenience. These forbid a man, as it is said, to give testimony to invalidate an instrument designed to circulate as negotiable paper, after having lent his aid in giving it character and currency, by affix ing to it his own signature. The English judges, by their determination in Walton v. Shelley, in the king’s bench, exclud *588 cd thq witness on principles of public policy; Lord Mansfield, in that case, declaring the rule to be, that no party who had signed a paper or deed should ever be permitted bo give testimony to invalidate the. instrument, because every man who is a party to an instrument gives credit to it. But the same court afterwards, in Jordain v. Lashbrooke, admitted him as competent to testify. The American courts have likewise decided •differently upon the question, some admitting, others rejecting the' witness. The rule of some of these courts, applicable to negotiable paper, excludes the witness only when the paper has been negotiated and put into circulation before its maturity. The cases and authorities upon the whole question are collected and referred to by the counsel in their several briefs. One important question upon the general subject discussed in the present case, has been already before this court, and settled in Treon v. Brown & Fuller, 14 O. R. 483. There the instru ments, the drafts in controversy, were made at Miamisburg, indorsed there by all the parties, and given to Brown & Co., the plaintiffs, who, after failing to obtain the money, and causing them to be protested, commenced a suit to recover the amount •of the drafts. Joseph Watson, who was an indorser, was offered as a witness upon the trial to prove them void, and defeat a recovery, but the court excluded the witness; and this decision afterwards, upon -a writ of error, was sustained. This decision •settles the law in Ohio, and excludes the witness whenever the •commercial paper has been negotiated in the course of business, and before it fell due ; and leaves for us, on this branch of the case, the single question, whether, to a negotiable security, if put into circulation, when over due and dishonored, the same rule is to be applied.
The case of The United States v. Leffler, 11 Peters 86, was upon a joint bond where one who was an obligor, but not a defendant, wras called and admitted as a competent witness. By the judge giving the opinion of the court, it is said, that the case in 6th Peters 51, Bank of the United States v. Dunn, decides that no man who was a party to a negotiable instrument *589 should be permitted by his own testimony to invalidate it. That the principle settled by the court goeáyto the exclusion of such-evidence only in regard to negotiable instruments, upon the grounds of the currency given to them by the name of the witness called to impeach their validity, and extends not to any other case to which that reasoning does not apply.
Both in the case in 6th Peters, the leading case in the United States court, and in Walton v. Shelley, the negotiable paper to' which the rule was applied had come into the hands of the indorsee as an innocent holder, received in the regular course of business, and, as it is understood, before it was due. Upon the faith of such paper men of business are in the daily habit of dealing with confidence, and the public interest requiring that there should be such confidence, they are encouraged so to deal by the decisions of the courts, and by the law affording to them a peculiar protection. But this confidence is never reposed in negotiable paper over due, dishonored, as it is called. Whoever takes such paper, takes it marked with suspicion upon its face; the law withdraws from it the peculiar protection, and leaves it subject, in the language of the books, to all equities, in the hands of such a holder. There is good reason, then, that the holder of dishonored paper should not use for his protection, the shield provided for a different description of persons. In behalf of those who are supposed to be thrown off their guard by the apparent fairness of the transaction, an extraordinary rule is adopted, and to them it should be applied. But the holder of negotiable paper taken after due and dishonored, stands in a different situation; he took it to recover the amount under the-application of different rules both of law and evidence.
The plaintiff in this case took the obligation after it was due, and we are of the opinion, for that reason, that he is not entitled to exclude Christopher Morningstar, whose name is upon the instrument, from becoming a witness.for the other defendant.
This disposes of the main questions in controversy between-the parties. There are two or three other errors alluded to, *590 they are however not regarded by the court of serious import.ance in the decision of the case.
It is said that all the issues made up between the plaintiff •and. Christopher Morningstar', the infant, have not been found by the jury.
To this it may be answered that the issue upon the defense •of’infancy being found in favor of the infant, necessarily concluded any other issue. It could be of no possible consequence for the jury to find whether the instrument was procured by fair or fraudulent means, upon good consideration or without any consideration. According to any state of facts, under the pleadings, the plaintiff could not recover.
To the objection that a new trial in the case might perhaps be granted after the infant’s testimony had been given, it-is sufficient to say, that the application for a new trial is to be addressed to the court. They would take care, in considering the motion as it respected the claim to a new trial whether against cne or the other of the defendents, to prevent the infant’s testimony from benefiting himself, and if the party should desire on that subject the supervision of the court of last resort, it could be secured by causing the testimony upon which the court below grants or refuses a new-trial, to appear upon the record.
It is further said that the plea’in bar in the case on the ground of fraud setting out the facts, is not a good plea, and that the demurrer taken to it ought to have been sustained.
The right to take advantage of the objection after verdiqt, and upon a writ of error, is secured to the party by our statute; .but the court upon an examination of the plea, do not regard it as defective upon the demurrer. The plea states a train of facts, and with sufficient formality, showing, if true, that the •obligation was procured by fraud.
It is further said that the weight of the evidence before the jury was against their verdict. We have drawn a different conclusion from the facts as shown in the bill of exceptions.
In the opinion of the court, none of the various errors assigned require a reversal of the judgment of the court of common pleas; and it is consequently affirmed.