Walicer, J. The defendant in the court below filed two pleas in abatement'to the writ: 1st. That he was not about to remove •out of the State, as alleged in the affidavit of the plaintiffs: and 2d. That the agent of plaintiffs, who signed the attachment bond for them, had no legal authority to do so. The plaintiffs demurred to the first plea, and the demurrer was sustained. The sufficiency of this plea will first be considered. The statute requires of the plaintiff to file a declaration, an affidavit, and a bond with the clerk. The facts to be sworn to, the manner of taking the affidavit, the bond, its condition, and approval, are prescribed by the statute, after which it is (in the 6til sec. Digest, 173) declared that, “ on the requisites herein before prescribed being complied with, the clerk shall issue a writ of attachment, directed,” &c. The plea questions the sufficiency of none of these pre-requisites, but tenders an issue upon the facts sworn to in the affidavit: at least, to so much of the affidavit as states that he was about to remove, &c. We are of opinion that the writ properly issued when the pre-requisites of the statute were complied with. The statute expressly makes the affidavit sufficient evidence of the facts, and does not contemplate a collateral issue of this kind, as may be fairly inferred from the fact that it in detail points out every step to be taken by all the officers and parties charged or connected with the suit or proceeding. It provides a bond not only requiring the party plaintiff not only to prove his demand on the trial at law, but the forty-seventh section also provides “that if it shall appear that such writ did not issue in accordance with the true intent and meaning of this act, the defendant may sue upon the bond and recover such damages upon a trial at law as a jury may assess.” This section is evidently designed to save harmless the defendant if the writ issue contrary to the true intent, &c.; or, in other words, where the party was not about to remove, &c. The statute, moreover, provides that if the defendant desires to retain his property, he may file a bond with the clerk conditioned that he will appear and answer the plaintiff’s demand, and will abide the judgment. Now, if the party be not really about to remove, as charged in the affidavit, this remedy in most instances is simple and easy. But again: the issue which is tendered by plea is of such a nature as to render it almost impossible to arrive at any degree of certainty, by ordinary evidence, as to what is the real intention of the defendant. The plaintiff forms his conclusions, in many instances, from circumstances slight in themselves, and not such as to awaken suspicion in one less interested, for it is not unfrequently the case that the open declarations and intentions of the defendant are at direct issue with his real intentions, and it is only by close observation that a clue to real intention can be ascertained. The references which have been made by counsel to the decisions of several States under their own statutes, are not sufficient to warrant this court in adopting a similar practice under ours. We are, therefore, of opinion that the demurrer to the first plea was well taken. The demurrer to the second replication to defendant’s second plea presents for our consideration the sufficiency of both the plea and replication: because if the plea is not sufficient in law to abate the writ, it will be a matter of but little importance whether the replication is sufficient or not. It is true that this is a statutory proceeding, in derogation of the common law, and should receive a strict construction; yet there is a common sense view of this and all other acts, whether in derogation of the common law remedies or not, that should not be lost sight of, for it is not unfrequently the case that courts, by adopting this familiar and well recognized rule, feel that their sphere of action is so circumscribed as to force them into refined and unmeaning technicalities, such as defeat every valuable purpose of our most important and useful statutes. This statute requires the “creditor to file with the clerk a bond to the defendant with sufficient security,” &c. So, the same statute says the creditor shall file a declaration or statement in writing with the clerk, and again, that he shall file an affidavit, &e. To pursue the strict letter of the law here, in each instance the creditor should be the actor in proper person, but such never could have been the intention of the legislature. Nor can it, with more reason, be argued, that the creditor should do more than file a good and valid bond with good security, such as will be able to pay any amount of damages the defendant may sustain. It is not in his mouth to complain whether they are bound as principle or security, so they are bound, and sufficient in estate to secure him from loss. But again: this matter of principal and security is only important as between themselves, because, independent of the bond, the plaintiif is bound to the value of his whole estate for any damage which may arise out of his wrongful acts. It has been repeatedly decided, by the courts of our sister States, that a bond executed by securities alone in form according to their statutes, is a valid and substantial compliance with the statute. As in Kentucky, in cases of bonds for costs, (Hardin, 149,) and appeal bonds, (id. 173.) In Indiana, an appeal bond, executed by security alone, is good. 1 Blackf. 51. In Massachusetts a replevin bond, executed by two of four principals and two securities, is hold sufficient. 14 Mass. 314. 5 Cow. 35. So, in our own State, a bond for costs executed by security alone is sufficient. The sole purpose of all these statutes is to give to the defendant ample security. No construction should be indulged which would impair his rights in this respect. Neither the language nor the intent of the law implies that importance is attached to the particular persons who are to become bound. To indulge a limited construction of this act would materially affect the usefulness of the law without adding anything to the security afforded the defendant; for instance, where-there are several joint creditors, who reside in different parts of the State or beyond the State, if it be required of them to execute the bond in person or by agent, before the writ issues, before the necessary bond could be procured, the exigency which invoked this summary aid would pass by, and the writ be of no use to the creditor. Wherefore, in view of the statute, in all its bearings, we are of opinion that a bond, in accordance with the statute in form, executed by sufficient security, whether signed by the principal or not, is a good bond under the statute. It is contended, however, that the agent, who signed the principal’s name to the bond, was not authorized to.do so, and, for that reason, it is voidable as to him, and being voidable as to him, the securities, not being joint obligors, are not bound by it. It is true that, at the common law, the plaintiff must sue all the makers of the bond jointly or each separately. Our statute has modified this rule, and under it any number, or the whole, may be sued. The common law doctrine is found in 2 Tidd, 803, and 1 Chitty, 30, and is founded on the rule that, as they are sued as joint obligors, the proof must sustain the allegation, and if one be discharged the allegation and the proof vary, and all are necessarily discharged. Thus, in Tidd, “the plea of one defendant for the most part enures to the benefit of all, for the contract being entire the plaintiff must succeed against all or none.” Chitty says, in actions ex contractu against several, it must appear on the face of the pleading that the contract was joint, and that fact must also be proven on the trial. In a case where there was a discontinuance as to one defendant after service as to all, this court decided that it amounted to a discharge of the whole action, placing it on the ground that as the plaintiff has elected to treat the contract as a joint contract, he was bound by the election, and must recover against all or none, declaring, at the same time, that they could see no sufficient reason for the rule. —Lacy, J., dissenting. Frazier et al. vs. State Bank, 4 Ark. Rep. 509. Subsequently, in the case of Ashley vs. Hyde & Goodrich, this court extended the rule, and made it embrace a case of implied assumpsit against two. The court, in delivering the opinion, admitted that no authority had been found in point, and grounded their opinion on the principle that as the action was for a joint assumpsit the proof must sustain the allegation, or both are discharged, or that proof of a joint contract would not support a judgment against one. So in the case of Beebe vs. The Real Estate Bank; and in a later case, Brewton vs. Gregory, 3 Eng. 178, where one defendant made default and the other pleaded, the issue being found for him, the court held that the party making default was entitled to the benefit of the successful de-fence of his co-defendant, and was thereby discharged. In all of these cases the court recognized the right of the party to treat the contract as joint or several, and sue any number of the obli-gors, but that if he elect to sue any number of them, those sued are taken as joint obligors, and the proof must sustain a joint contract as to them. Our object in referring to these decisions is to show the ground on which they rest, which is, that in all actions of contract, notwithstanding the contract is several as well as joint, and the plaintiff may sue each separately or all, or as many of the parties to the contract jointly as he may think proper, when he has made his election, by instituting his action against all, or any number of the parties, he will be held to his election. There is no obligation whatever resting on the obligee to embrace more parties in his writ than are truly liable upon the bond, and should he do so, it is at his peril, for, if he fail to obtain a judgment as to one, the other defendants are discharged. There are many exceptions, we are aware, to this rule, and many very respectable authorities may be found, where a nolle prosequi as to part of the defendants has been entered after a joint plea and judgment against the others. (See 11 Peters, 86, and the cases there cited.) But it is unnecessary to refer to them. The doctrine, as settled by our own court, perhaps, adheres to the English common law principle as strictly as any court in the United States; yet, tested by these rules, it is evident that this bond is not within the rule there laid down. No issue has been taken upon this bond, no election to sue upon it as a joint bond has been made. The obligee may sue any number of them he pleases, and it amounts to no discontinuance. If, however, he so frame his pleading as to embrace parties not liable, it is his own folly, and he should abide the consequence. 1 lere there is a good bond against two of the obligors; the plea is silent as to them, but simply avers that the agent had no power to sign the name of his principal. If we are correct in our conclusions that a bond executed by sufficient security, without the name of the principal to the bond, is valid; and that if it be there improperly, the validity of the bond, as to the securities, is not thereby affected, the conclusion is irresistible that the plea is defective in this respect. But there is another ground on which it is very questionable whether the plea is or not sufficient. The plea only denies that the agent had sufficient authority to execute the bond for his principal: but all that is stated in the plea maybe true, and still the bond may be binding on the principal: as, for instance, suppose, after the agent signed the name, but before the bond was filed, the principal had ratified and affirmed the act, the signature would, from that moment, have been his own as fully as if executed by himself. Pleas in abatement are construed strictly; they are required to be so certain as to exclude every conclusion against them. It is unnecessary to bestow time or consideration upon the sufficiency of the replication. It set up that a good and sufficient bond, signed by two securities, who were, and yet are, solvent and able to pay the penalty of the bond that had been filed before the writ issued. We have already decided such a bond good, and consequently that the replication was sufficient. The case of Kellogg et al. vs. Miller et al., has been relied upon by plaintiff in error. Although there is a striking similarity between the state of case presented upon the record in these two cases, yet it will be perceived that the question upon which that case was made to turn was materially different. The point was neither raised nor decided by the court, whether a bond, signed by securities alone, would, or would not, have been sufficient; nor was the liability of two of these obligors pressed before the court in that case. The replication contained an averment that the principal had subsequent^ ratified the act of the agent, and the court decided that such ratification, being made after the writ issued, came too late. So far, therefore, as these points may be considered as having been incidentally raised and decided in that case, they must be considered as overruled. In conclusion: it is objected that the circuit court erred in rendering judgment in favor of the plaintiffs below, without first having disposed of the issue upon the replication to the second plea. The suit was brought on a liquidated demand for money; the court, therefore, had power to render judgment upon it without the intervention of a jury. As to the issue, the law is, in regard to replications to pleas, that the plaintiff may file several replications to one plea, and if any one of them is good, it is sufficient to defeat the plea, just upon the same principle that any one of several pleas, if good, is a bar to the whole action. 1 n this case there was a finding in favor of the plaintiffs on the demurrer to the second replication, and the judgment was properly rendered in their favor. Let the judgment be affirmed with costs.