## Wilt *versus* Snyder.

1. The rule declared in Walton *v.* Shelley, 1 *Term. Rep.* 296, excluding testimony tending to impeach negotiable paper, is, in Pennsylvania, to be restricted to the case of negotiable paper actually negotiated in the usual course of business before its maturity and in the hands of an innocent holder, without any previous notice of any original defect in it; and is to be confined to the parties whose names are upon the paper.

2. In a suit by the holder against the acceptor of a draft payable to one or his order, a mere receipt, of the same date as that of the draft, by the person for whose accommodation it was alleged to have been drawn, stating such fact, and without any evidence of its execution at the time it bore date, was not evidence on the part of the acceptor.

3. It was not competent for the plaintiff in such a suit to prove his own declarations made in the presence of the person for whose accommodation it was alleged the draft was drawn, and from whom he had previously received it, who was not a party nor a witness in the cause: nor were the admissions of such latter person evidence in the suit against the acceptor.

4. Where some evidence was given which tended to show that the draft was an accommodation paper, it was error in the Court to judge of it exclusively, and, on the ground that it was not such a paper, to direct the jury to find for the plaintiff: the evidence given should have been submitted to the jury.

ERROR to the Common Pleas of *Union county.*

This was an action of debt, by Snyder *v.* Wilt, to enforce the payment of the following acceptance and protest:—

$267.50                              Hartleton, Dec. 20, 1844.

Ninety days after date, please pay to the order of C. S. Kendig, two hundred and sixty-seven dollars and fifty cents, payable at the Bank of Northumberland, and charge the same to my account, and oblige          Your obedient servant,          WM. GLOVER.

To JOHN WILT, Hartleton, Union County, Pennsylvania.

Written across the face, "Accepted, John Wilt." Endorsed, "C. S. Kendig."

Protested at the Bank of Northumberland, 22d March, 1845.

The defendant pleaded payment with leave, and gave full notice of his defence, to wit: That the draft had been drawn by Glover, and accepted by Wilt, for the accommodation of Robert Barber, and that after it was endorsed by Kendig, it was handed to Barber, and by him left with Snyder, to get it dis-

G 2

[Wilt *v.* Snyder.]

counted, and that all he ever advanced on its credit had been recovered and paid to him by the defendant in this suit, and that he, Snyder, would be called upon at the trial to prove the consideration he gave for the draft.

The *defendant* offered at the trial a receipt signed by Robert Barber, of the same date with the draft, and describing it accurately, and agreeing to account for it, and *to lift it at maturity*, which was rejected by the Court. He also offered the deposition of Robert Barber, he having been released by the defendant from the costs, and the debt, &c., that might be recovered against Wilt in this suit, to prove such matters as transpired *subsequent to the negotiation of the paper*. This was also rejected by the Court. The defendant then proved by the depositions of William Glover and John Snyder, that after the draft was in C. A. Snyder's hands he was trying to negotiate it to pay Barber's debts, &c., and upon Glover applying to Snyder to lift the draft, he only claimed $158, to wit, $58 in money, which the defendant had paid him, and $100 for which he had given Barber privilege to draw on him in favor of Chandler, and which Chandler refused to accept, and which, consequently, never was drawn by Barber or paid by Snyder.

The *plaintiff* gave in evidence the deposition of John A. Fisher, Esq., proving the declarations of Robert Barber prior to the making of the draft in question, together with notes and papers made before the suit and since its commencement.

After the deposition of Mr. Fisher had been given in evidence, the deposition of Chandler was offered on the part of the plaintiff. It was as follows:

Dauphin county, ss.

In pursuance of the annexed rule of court and notice, personally appeared before me, the subscriber, a justice of the peace in and for the said county, Jonathan Chandler, who, after having been sworn, saith as follows: Robert Barber was indebted to me for boarding himself and family last winter; he asked me to accompany him to the office of Charles A. Snyder to get him (Snyder) to agree to pay me $100 out of an acceptance in the hands of C. A. Snyder on a man of the name of Wilt, up the river. I went with Barber to Snyder's office, but he (Snyder) refused to agree to do so, stating he had paid Barber $150 in money, and was bound to Barber's lawyer for $75 more, and there would not be that much coming to Barber; and that he (Snyder) had already lost enough by Barber. We then left. Some time after that, Robert Barber and Sheriff Glover, of Union county, were in Prince's Hotel, where they both acknowledged that the acceptance was all right, and should be paid to Snyder at its maturity. I reside in the borough of Harrisburg.        JONATHAN CHANDLER.

Sworn and subscribed, August 16, 1845.

It was alleged to be offered to contradict Glover, and show that value was paid for the draft. It was objected to on the part of

[Wilt *v.* Snyder.]

defendant: 1. That the declarations of Barber are not evidence against Wilt. 2. The testimony already given by plaintiff shows that the note was no longer in the possession of Barber at the time these declarations were made. 3. That the plaintiff might call Barber as a witness. 4. That the declarations of Snyder contained in the deposition are not evidence, being made in the absence of Wilt. 5. That any agreement made by Barber and Glover in the absence of Wilt would not be binding on him.

Objections overruled, and defendant excepts.

The receipt offered on the part of the defendant was as follows:

Received, Hartleton, December 20, 1844, of William Glover, his draft on John Wilt for two hundred and sixty-seven dollars and fifty cents, for which I promise to account and lift at maturity.
$267.50.　　　　　　　　　　　　　　　　　　　　　R. BARBER.

Proof was given that it was in the handwriting of Barber.

To the admission of this receipt the *plaintiff* objected: 1. That it is nothing but the declaration of Barber without being under oath. 2. If Barber were here, he could not be a witness. 3. To admit it would be against policy. 4. Because irrelevant.

Objections sustained; paper rejected and defendant excepted.

As to the deposition of Robert Barber. Defendant's counsel offered such parts of the deposition of Barber as related to facts and circumstances occurring subsequent to the time the draft came into the possession of Snyder. The defendant's counsel stated that the offer was to show that Snyder is not the owner, and that he is merely a trustee for Barber, and that he received it for the purpose of getting it discounted for Barber, and is now holding it as his agent. To be followed by evidence that defendant accepted the draft for the accommodation of Barber.

Plaintiff objected on the ground of interest and public policy,

2. That the facts offered do not amount to a defence, and therefore irrelevant.

3. Does not offer to prove that Wilt was not liable to pay the draft; that that fact must first be proved in order to admit subsequent transactions.

4. That the testimony offered does not prove payment of the draft, in either fact, law, or equity.

Per WILSON, P. J.—"I do not see any material difference between this deposition and the former one, which was rejected irrespective of the ground of interest. Its tendency is still to destroy the paper in the hands of the holder, in consequence of transactions previous to Snyder becoming the holder of the paper, and to show by these transactions that Snyder is not the owner of the note; and that, without proof of payment of the draft."

[Wilt *v.* Snyder.]

Exceptions sustained, and defendant excepted.

On the part of the plaintiff was offered the following notes and due bills:

"*Harrisburg, Nov.* 5, 1844.

Due unto C. A. Snyder or order, one hundred dollars, which I promise to pay to him ten days after date.     R. BARBER."

"*November* 15, 1842.

Due C. A. Snyder, fifty dollars, value received.

$50.                                                R. BARBER."

Objected to by defendant as irrelevant.

Objections overruled, and defendant excepted.

Plaintiff closed.

On the part of defendant was again offered the deposition of Robert Barber, for the purpose of rebutting the allegation of indebtedness to Snyder.

The objections made to it were sustained, and exception on part of defendant.

After the testimony was closed, the defendant's counsel submitted several points to the court; those which were made the subject of exception are set out, with the answers of the court.

2d point.—If the jury believe that Barber was the owner of the draft, and that he did not sell it to Snyder, nor pledge it to him for advancements then made, or for an antecedent indebtedness, or for future liabilities, then Barber would still continue to be the owner of the draft, and Snyder could not maintain this suit without the authority of Barber, or against his consent.

Answer.—We refuse to answer this point as requested.

5th point.—That the fact that Snyder retained the notes of Barber, now given in evidence by the plaintiff, is strong proof that he did not receive the draft in payment of such notes, or else the same would have been delivered over to Barber.

Answer.—We refuse to instruct you as requested.

6th point.—That if the jury believe that Snyder received the note as Barber's agent to get it discounted for him without having any other agreement in reference to it, Snyder's possession of the note would, in the first place, be fair and honest; but an attempt to collect it afterwards from Mr. Wilt, in his own name, and convert it to his own use, would be unfair and fraudulent, and he cannot recover.

Answer.—If the defendant had produced any evidence tending to show that the note or draft was an accommodation paper, and not what it purports to be, a commercial transaction, in the usual course of business, the law would be as here stated; but having failed to do so, and having failed to produce any evidence of a withholding of the note from Barber, we refuse to instruct you as requested.

[Wilt *v.* Snyder.]

The court having answered these and other points of defendant, concluded their directions to the jury, as follows:—

"And taking this view of the case, under the opinion of the Supreme Court, we direct a verdict for the plaintiff for the amount of the plaintiff's claim, deducting the payments admitted to have been made."

. To this opinion, and the answers to the points, defendant's counsel excepted, and requested them to be filed of record, &c.

See former report of this case in 3 *Harris* 59.

It was assigned for error:

1. The court erred in rejecting the receipt of Barber for the draft.

2. The court erred in rejecting the deposition of Robert Barber.

3. The court erred in admitting the deposition of Chandler, and the notes from Barber to Snyder.

4. The court erred in their answers to defendant's 2d, 5th, and 6th point.

5. The court erred in directing a verdict for plaintiff.

The case was argued by *Casey*, for the plaintiff in error. *Slenker* for defendant.

The opinion of the Court, filed August 12, was delivered by

CHAMBERS, J.—This action is founded on the acceptance by John Wilt of a draft on him by William Glover, for $267.50, payable to the order of C. S. Kendig, who endorsed the same, and which came to the hands of Charles A. Snyder, the plaintiff below. In defence it was alleged, that it had been drawn and accepted for the accommodation of Robert Barber, who, after the endorsement of Kendig, left it with Snyder, for the purpose of raising money for the use of Barber, and that what Snyder had advanced, had been paid him. The controversy is about the amount of Snyder's claim for advances and liabilities incurred by him for Barber, on the credit of this acceptance.

The defendant gave in evidence the depositions of John Snyder and William Glover, proving the admissions of Charles A. Snyder in relation to this draft and acceptance; and afterwards offered the deposition of Robert Barber, to whom a release in due form had been executed by John Wilt. It was proposed by defendant to give in evidence such parts of this deposition, "as relate to facts and circumstances occurring subsequent to the time when the draft came into the possession of Snyder." This was objected to, and the objection sustained. Exception was taken, which is now assigned for error.

When this case was before this court on a former occasion, by writ of error, it appeared that Barber had been permitted to

VOL. V.—11

[Wilt *v.* Snyder.]

testify without limitation, as to this draft and acceptance; and at a time prior to the release executed to him by Wilt. In the opinion of the court, delivered at that time, it was said that Barber was incompetent by reason of his relation to the draft of which he had been the owner, and which he had been instrumental in passing to the plaintiff Snyder, but also by reason of his interest on his liability to Wilt.

The objection to interest being removed since by release, the question raised is whether Barber was competent or not for the purpose, and to the extent offered? If his name had been on the paper negotiated, he was not excluded by the rule of Walton *v.* Shelly, as modified by the decisions of this court, from testifying to facts and circumstances occurring subsequent to his delivery of the accepted draft to Snyder, and which did not impeach its original validity, or the liability of Wilt the acceptor, as affirmed by such delivery.

The rule referred to was one of commercial policy in relation to negotiable paper, actually negotiated in the usual course of business, and requiring confidence for the public convenience and security. Though Lord Mansfield introduced it on the maxim of the civil law, that no one is permitted to allege his own turpitude, yet it has been rightly affirmed in this court, that the true foundation of the rule was *policy*, which interposed its protection only in favor of third persons who, in the common course of business, have become holders of paper strictly negotiable. Hepburn *v.* Cassel, 6 *Ser. & R.* 115.

It was early adopted in Pennsylvania, with some limitations: Pleasants *v.* Pemberton, 2 *Dall.* 196; Baring *v.* Shippen, 2 *Bin.* 154; McFerran *v.* Powers, 1 *Ser. & R.* 102; and has since been so frequently recognised and applied in more recent decisions, that its authority may be considered as unquestionable. It is however with the limitation that its application is restricted to the case of negotiable paper, actually negotiated and put in circulation before its maturity; and still in the hands of an innocent holder, without notice of any original defect. The rule with such limitations has been sustained in the Supreme Court of the United States, in cases reported in 6 *Peters* 51–57; 8 *Peters* 12; 11 *Peters* 86, 94, 95; 12 *Peters* 149.

There has been no tendency in this court to extend the rule to the exclusion of testimony, but to relax it in favor of its admission. This is manifested by the limitations adopted. It is confined to instruments strictly negotiable, which have been actually negotiated in the usual course of business: Hepburn *v.* Cassel, 6 *Ser. & R.* 115; Baird *v.* Cochran, 4 *Ser. & R.* 397. A party to paper actually negotiated, though inadmissible to impeach it, may prove subsequent matters as payment or discharge: Appleton *v.* Donald-

[Wilt v. Snyder.]

son, 3 *Barr* 385; Guilford *v.* Skinner, 9 *Barr* 334; Maynard *v.* Nekervis, *Ib.* 81.

As the deposition of Barber was offered in the court below to prove facts and circumstances occurring subsequently to the transfer, in which he was instrumental, it was admissible within the rules as established by this court. The court below, in rejecting the deposition for the limited purpose, may have been misled by the opinion given by this court in this case on the former occasion. It is to be remarked, that there the witness was clearly incompetent by reason of interest; and what was said by the learned judge in relation to his exclusion from testifying, by reason of having been the *bona fide* owner of the draft, which he disposed of, was without the full consideration that it would have received, had the admission of the testimony depended on the rule of policy, instead of the more decisive objection of interest.

In our opinion, policy does not require the extension of this rule to exclude from testifying any other than parties to negotiable paper whose names are on the paper, provided they are not disqualified by interest in the event of the suit, or by reason of legal infamy. In the case of Walton *v.* Shelly it was said by Lord MANSFIELD, " That the old cases upon the competency of witnesses have gone upon very subtle grounds. But of late years, the courts have endeavored as far as possible, consistent with those authorities, to let the objection go to the credit, rather than to the competency of the witness." The like sentiments were expressed by Lord HARDWICKE in the case of King *v.* Bray, and cited with approbation by Lord KENYON in Bent *v.* Baker, 3 *T. Rep.* 32.

Wherever there is not a positive rule of law against it, it is better to receive the evidence of the witness, and allow it to be submitted to the jury, with such remarks as the relation of the party to the transaction may seem to require in the opinion of the court. The objection that a man should not be allowed to impeach and invalidate what before by his declarations and acts he had attested or held out to the world to be valid and true, goes only to his credibility with the jury: 1 *Phil. Ev.* 39, 40; *Greenl. Ev.* sect. 384. On this ground parties to instruments other than negotiable paper, as well as subscribing witnesses, if not under some other disability, are admissible witnesses to impeach the original validity of such instruments: Baring *v.* Shippen, 2 *Bin.* 165; Balliott's Lessee *v.* Bowman, 2 *Bin.* 162, note; Title *v.* Grevett, 2 *Raymond* 1008; Lowe *v.* Jolliffe, 1 *W. Bl.* 365; Twambly *v.* Henley, 4 *Mass.* 441.

In the case of Baring *v.* Shippen, Chief Justice TILGHMAN, who refused to apply the rule of Walton *v.* Shelly, to an assignor of a bond, said, " that he was not for extending the rule further than it had been already carried." We concur in this as the safest

[*Wilt v. Snyder.*]

policy, and that it is better to restrain objections to the credit, than to the competency of witnesses.

On principle and authority we are of opinion that the rule in Walton *v.* Shelly should not be applied to exclude a witness as incompetent whose name was not on the paper negotiated, though he may have been an owner and took part in the transfer and delivery, provided he is otherwise competent. This restriction of the rule is supported by the decision of this court in Guilford *v.* Skinner, 9 *Barr* 334, in which it was ruled that the holder of a promissory note payable to bearer, who had transferred it without endorsement, was a competent witness for the drawer. Nor have we been able to find the decision of any other Court denying the competency of a witness under such circumstances.

In the opinion of this court, the court below erred in rejecting the deposition of Barber as offered in evidence.

It is assigned for error, that the Court of Common Pleas erred in rejecting the receipt of Barber to W. Glover, dated the same day with the draft in evidence by defendant. As this was no more than the act or admission of Barber, and without evidence of its execution at the time it bears date, we think there was no error in refusing to admit the receipt in evidence.

The admission of the deposition of Jonathan Chandler is assigned for error. This evidence was given by plaintiff, and proved the declarations of plaintiff and Robert Barber; but it was not competent for the plaintiff to prove his own declarations, nor to prove the admissions of Barber, who was no party to the action, and whose testimony had not been received. Had Barber's deposition been admitted in evidence, it would have been pertinent to contradict or qualify the testimony of Barber by the testimony of Chandler. There was error in the admission of the deposition of Chandler, to which exception was taken by defendant.

It is also assigned for error, that the court below, in answer to the sixth point presented by defendant, said, " If the defendant had produced any evidence tending to show that the note or draft was an accommodation paper, and not what it purports to be, a commercial transaction in the usual course of business, the law would be as stated by defendant; but having failed to do so, and having failed to produce any evidence of a withholding of the note from Barber, we refuse to instruct you as requested;" and concluded their direction to the jury as follows : " and taking this view of the case, under the opinion of the Supreme Court, we direct a verdict for the plaintiff for the amount of plaintiff's claim, deducting the payments admitted to have been made."

In this answer and direction the court assumed that there was no evidence tending to show that the draft on which the action was founded was accommodation paper, and not a commercial transaction in the usual course of business; and taking that view of

[Wilt *v.* Snyder.]

the case and evidence, directed a verdict for the plaintiff.  In this, it is the opinion of this court, there was misdirection and error by the court in not submitting to the jury for their consideration the facts as testified to by John Snyder and William Glover, as to the character of the draft and the liability and purpose for which the plaintiff held the same ; and in withdrawing entirely from the jury the facts in the direction given to find a verdict for the plaintiff.

The other errors assigned by plaintiff in error were not pressed, and are not sustained.

Judgment reversed and a *venire de novo* awarded.