By the Court—Hoffman, J.
The appeal of the defendant from the judgment, brings up, first, the question whether the *604 charge of the Judge was erroneous; second, whether he was bound to charge anything which he was particularly requested to charge, and refused to do; third, as to his rulings upon matters of evidence.
1st. The portion of the charge excepted to is as follows: “ If there are subscription books, or a subscription book which is not produced, nor its contents proved, then you have not the means of knowing the amount subscribed, and there is no sufficient proof that the subscription was not made up.”
James Smith had sworn, that he was a Director, and had obtained subscriptions for the Company. That there was one book missing; the one in which he obtained subscriptions.
Books Hos. 2 to 9 had been produced and authenticated by Tracy, the Secretary. Each book contained some original subscriptions, and some not original, copied from the originals in other books. The books were in the hands of different parties. He transcribed into one book, all the names he knew to be genuine, and also the names and amounts of those he otherwise knew had subscribed. The amount of the subscriptions footed up $300,000.
Ho. 1 is the book thus referred to. The witness did not know that what were produced were all the subscription .books used. He got some information from the parties or others as to some subscriptions. $300,000 could be made up from the books by any person without any duplicity.
Sturges states that he footed up the subscriptions, and they amounted to considerable over $300,000. Chesebrough’s was over $13,000. After the computation was made, the books went out again.
Tracy, in his computation of the amount, took Chesebrough’s subscription at $6,500.
It is shown that book Ho. 1 was not a full statement of the whole of the subscriptions, and nothing else in evidence professed to be so. The book missing may have contained subscriptions to a heavy amount, enough to cover all subscriptions objected to, even if the objections were tenable. The Judge was right in saying that the defendant had not shown what he was bound explicitly to do; that the $300,000 subscription was not *605 made up; the burden of proof was on the defendant to avoid his note on that ground. “ Aj .1 .Hi vlí wh&sought
2d. The Judge refused to charge that the $40,000 subscription of October 12th was not to be included in the sum of $300,000.
The terms of the subscription of the 12th of October were unconditional. The resolution of the 8th of November expressly includes the $40,000 as part of the $400,000 to be raised, the subscriptions not to be binding until $300,000, including such $40,000, was subscribed. The defendant subscribed book No. 3 with the names of the subscribers to the $40,000, and a copy of their subscription in it. There was scarcely ground for leaving the question to the jury of its inclusion. This was not asked, but a peremptory exclusion of what was rather matter of fact than of law, had the evidence been uncertain. Besides, the agreement signed by the defendant declares his subscription to be towards the subscription authorized by a resolution of the Board of Trustees of that date (Nov. 8th.) And that resolution in terms includes the $40,000 in the $300,000 to be subscribed before the subscriptions should be binding. By such reference the defendant had notice of the terms of the resolution, and the resolution became incorporated in the defendant’s agreement.
So that including the $40,000 in the computation, to show that $300,000 had been subscribed, was in exact conformity with the agreement of the parties, for the resolution in pursuance of which the defendant’s subscription was expressed to be taken declares that it shall be so included.
The second request to charge was refused properly. We have decided that the burden of showing that a Company has not the power of subscribing must be clearly made out by production of its charter, or some general law.
As to the third request, proof was made, that subscriptions were not authorized by the Board of Directors of the International Insurance Company; and as to the Philadelphia Insurance Company, there is no proof on that point. As to the former,
Ogden says there was no resolution authorizing the subscription, but the Company knew of its being made. The principal members of the Board knew it; the members of the Finance Committee knew .it.
*606 The defendant has not proven enough in this instance. He should have shown that the power rested only in the Board.
So in the case of the Philadelphia Company, the President approved of the subscription, and we know nothing of the charter of its incorporation, its prohibitions, or delegation of powers.
3d. As to the exceptions relating to the rulings upon evi-’’ dence.
The exclusion of the resolution of the 30th of October, 1854, was proper. Whatever privileges had been given to the sub-. scribers for the $40,000 were extended to every subscriber towards the $300,000. By the resolution of the 8th of ISTovember the $40,000 was expressly declared to be part of the $300,-000. The resolution of the 30th of October comprehends all the arrangements which might be made by the Finance Committee for paying the pressing liabilities, and would be equally available to all the subscribers. So that if there was anything confidential in the advance of the $40,000, it was extended to all the subscribers. Besides, the defendant had notice that the $40,000 subscription was included with his own to make up the $300,000, and was so constructively notified of its terms and conditions ; and if it was affected by the resolution of the 30th of October, he had such notice thereof before he subscribed. So that in neither aspect could that resolution affect his liability on his note.
The most important of the exceptions refer to the refusal of the Judge to permit evidence to be given of a parol agreement with various subscribers, made at the time, by which their respective subscriptions should not be absolute as they purported to be, but upon stipulations which would discharge them, or materially modify them, so that the $300,000 was not in truth fairly subscribed.
It seems to me impossible that evidence to an arrangement of this nature can be allowed. The subscriptions, or the notes given in pursuance thereof, were clear, definite and unconditional. I cannot believe that one of the subscribers could have set up with success a defense based upon such a contract, when sued by the Company. (Hoare v. Graham, 3 Camp., 57; Hogg v. Snaith, 1 Taunt., 347; Eaves v. Henderson, 17 Wend., 190; 5 Pick., 506.)
*607 In the case of Stewart v. The Hamilton College, (2 Denio, 403,) the resolution which qualified the apparent subscription was in writing.
In Acker v. Phoenix, (4 Paige, 305,) a composition deed was signed by the defendants among other creditors of the plaintiffs. They agreed to take certain securities to the amount of twelve shillings in the pound in full; on condition, however, that all the creditors united in the deeds. The plaintiffs sought to enforce the agreement for compounding, and alleged that it was Understood and agreed at the time that certain creditors, known as confidential, were not to sign but were to be paid first. On demurrer the bill was held bad; the complainants were attempting to vary the effect of the written agreement in a very essential point, by an allegation that there was a parol understanding at the time of the execution of the deed that a certain class of creditors were not to join. This was wholly inadmissible.
In the late case of Humfrey v. Dale, in the Queen’s Bench, (38 L. & Eq. R., 120,) Lord Campbell in delivering the opinion of the Court, which was particularly connected with the admissibility of the proof of usage, stated a rule which appears to me -of very general application to all questions of this nature. “Can the two parts of the alleged contract” (that which is written, and that proposed to be proved) “have full effect given to them, if both were written down without making it insensible or inconsistent.”
This rule will show the true principle of the important case of Chester v. The Bank of Kingston. (16 N. Y. R., 336.) Parol evidence was admitted to prove that a bond for the payment of money absolute in its terms, was delivered under an agreement by which it was to be held by the obligee as collateral to the debt of third parties, and to be canceled upon payment being had, frpm them.
If the case of proof converting an absolute deed into a mortgage is not strictly within the distinction and rule thus stated, it' may be treated, as it has always been, as exceptional (Despard v. Walbridge, 15 N. Y. R, 374.)
Again, the answer avers that $300,000 had not been subscribed. It may be a question whether under this averment it was competent for the defendant to prove that although the *608 amount had been subscribed, there had been made concurrent parol agreements with some subscribers to the effect sought to be proved.
There are a few other exceptions to be noticed.
The question whether the notes of the International Company were actually given is clearly immaterial. The subscription of the defendant was not on condition that the other subscribers should pay their subscriptions.
So was the question as to the indebtedness of the Atlas Company to the Philadelphia Company.
The exception as to Chesebrough’s subscription is not intelligible to me, and no notice of it is taken on the points.
The amount of the liabilities of the Company in March, 1856, cannot properly bear upon any of the issues.
The judgment must be affirmed, with costs.
Slosson, J.
The charge of the Judge, in respect to the effect upon the defendant’s liability, of false statements, if there were such, as to the pecuniary condition of the Company, made at the time of procuring his subscription and notes, was as favorable as it could well have been for him; and unless the verdict on that question is clearly against the weight of evidence, there is no reason for disturbing it. Such, in my opinion, is not the case; and, in so far as this appeal involves that consideration, it is unnecessary to add anything more.
• The only serious questions in the case arise under the refusal of the Judge to charge the requests submitted to him; his charge as to the effect of the absence of the missing subscription book, and of the proof of its contents; and his rulings on the trial, especially that which excluded evidence offered to show that a fraud had been practised upon the subscribers by secret arrangements between some of them and the Company, by which they were to be favored in respect to their subscriptions, in some way or manner not common to all the subscribers.
. First. The Judge refused to charge, as requested, that the $40,000 subscription of October 12, 1855, was a separate subscription, independént of the $400,000 subscription of the 8th November, 1855, and not entitled to be included in the sum of $300,000 which, by the terms of the subscription of 8th Novem-
*609 her, was to be subscribed before the same should be binding. I think the reference to the resolution of the Board of 8th November, contained in the agreement prefixed to the defendant’s subscription in the subscription book, - adopted that resolution as part of his contract. This agreement is the language of the subscribers, and the reference to the resolution is their own reference; and the contents of the resolution must be presumed to have been known to them. As, by this resolution, the $40,000 subscription is expressly to be included in the $300,000 subscription, and to go to make up that amount, the_ Judge properly refused to charge in respect to it as requested. (Coddington v. Davis, 1 Comst., 192.)
I am aware that a different view has been entertained on this subject by one of the learned Justices of the Supreme Court in this district, sitting at Special Term, in the case of Berry v. Yates, (24 Barb., 199,)—an action brought by the Receiver of the Company against one of these subscribers; but my own convictions will not allow me to acquiesce in his conclusions.
The Judge very properly refused to charge that the subscriptions by the Insurance Companies were void because they had no power or authority to make such subscriptions, and also to charge that, if not void for that reason, they were void because not authorized by their respective Boards of Directors, for the reason that the charters of such Companies were not produced, whereby the Court might judge whether they had such power or not; and no presumption can be entertained that they had not the power.
Second. The Judge charged that, if there were subscription books, or a subscription book which was' not produced nor its contents proved,- then the jury had not the means of knowing the amount subscribed, and there was no sufficient proof that the subscription of $300,000 was not made up. It was proved that one of the subscription books was missing. Whether its contents were proved was left to the jury, and there was evidence that the original subscriptions made in one book were copied into the others, to show who had subscribed; and the same witness who proved this, (Tracy, the Secretary of the Company,) also proved that he drew off from the different books the amounts of the subscriptions into another book, as also the names and amounts *610 of all which he knew had subscribed otherwise than from the books, and that the amount of the subscriptions so collected footed up $300,000, and he says that he knew that the names and amounts contained in the subscription books were all actual subscriptions, from his knowledge that the handwriting was genuine.
It is true he said, on his cross-examination, that he did not carry into this book all the subscriptions which he found in the subscription books; but he swears that $300,000 could be made up by any person from the books without duplicity.
This book, so made up by the Secretary, was before the jury, and it is fair to presume that they considered it as evidence, to some extent, of the contents of the missing book.
One of the Directors of the Company swears that he was present when the computation or summing up of the amount of subscriptions was made, and that there was something more than $13,000 over the $300,000 subscribed. One of the Trustees swears that he footed up the subscriptions, a few days after the meeting of 30th November, (when it was understood that the subscriptions had been completed,) and that they amounted to considerably over $300,000, excluding the special subscription of $50,000; and another Trustee swears substantially to the same thing.
Under all this evidence, the jury were justified, I think, in assuming, not only that the whole amount had been subscribed, but that that result had been ascertained by reference to all the subscription books.
But if this were otherwise, then, as the burden of showing that the whole amount of the $300,000 had not been subscribed was clearly on the defendant, it was true, as a legal proposition, that, if one of the subscription books was missing and its contents not proved, the defendant had failed to show affirmatively that the whole amount had not been subscribed.
Third. A more important question arises under the exclusion of evidence which was offered with a view to show that a fraud had been practised upon the subscribers by some secret arrangement between some of them and the Company, and I shall group together the offers of testimony made and questions put on that subject, so as to embrace them all in one discussion.
*611 The defendant offered in evidence, from the minutes of the Board of Directors, a resolution adopted by the Board, dated the 30th October, 1855, as follows:
“ That any arrangement made by the Finance Committee in paying or arranging for funds to pay the pressing liabilities of the Company, and to sustain the institution till other means can be provided, if they shall make themselves or their friends personally liable, the same shall be considered and treated as confidential in any event, equal in all respects to the amount of $40,000 already subscribed by the friends of the Company for its relief."
At the meeting at which this resolution was passed were present thirteen Directors or Trustees, of whom nine appear to be-subscribers to the $40,000 subscription, and the same number were subscribers to that for $50,000. This evidence, on objection being made, was excluded, though the ground of the objection is not stated in the Case.
On the examination of Mr. Ogden, the Vice-President of the International Insurance Company, and who had subscribed for that Company, the following question was put:
“ At the time of such subscription, was there any arrangement made with you by the Atlas Mutual Insurance Company in reference to said subscription, and the notes to be given under that subscription; and if so; state what it was ?”
This question was objected to, on the ground that the testimony would tend to vary by parol the terms of the subscription; and upon the Judge asking the defendant’s counsel if he proposed to show a parol arrangement, he stated that he did, and thereupon the Judge excluded the testimony.
The defendant’s counsel then asked the witness whether the notes of the International Insurance Company, in pursuance of said subscription, were given to the Atlas Insurance Company ; and on objection being made, this question was excluded.
The counsel then put this question to the witness: “State whether any, and if so what, inducements were offered you to induce you to make such subscription ?” The counsel stated that he proposed to prove that there was a parol arrangement, amounting in effect to an agreement that he need not give his notes for his subscription; upon objection being made, the evidence was excluded.
*612 ■ On the examination of Mr. Whipple, Marine Agent of the Philadelphia Insurance Company, and who had subscribed for that Company, this question was put:
“Was there any particular arrangement between you and the Atlas Mutual Insurance Company in reference to that subscription; and if so, state what it was ?”
This question was objected to so far as it was sought to alter the subscription by proof of a parol arrangement, and the Judge sustained the objection, and excluded the testimony.
The question was then put, “ whether the Atlas Mutual Insurance Company was indebted to the Philadelphia Insurance Company at that timé?” and this question, on objection, was-overruled.
On the examination of Mr. Arrowsmith, one of the subscribers, this question was put by the defendant’s counsel:
“ State whether your subscription was a subscription substituted in the place of another party?” The counsel stated the object of the question to be to show that some of the sums were subscribed by the Trustees themselves, with a parol privilege reserved of- procuring other subscribers subsequently in their place, and that the witness's subscription was one which was so substituted. The question, on objection being made, was disallowed. .
If all or any of these questions, or the evidence offered and rejected, tended to show that any portion of the subscriptions that enter into the aggregate of the $300,000, were made under an arrangement with the Atlas Insurance Company, securing to those subscribers an advantage not shared in by, or common to, the other subscribers, or that any such advantage was given to them by any subsequent arrangement between them and the 'Company before the defendant’s subscription was obtained, it would be a fraud upon him and a perfect defense to this action. The principle applicable to the cases of composition deeds 'between debtors and creditors, or between a single debtor and creditor, where the former brings in a surety on a compromise agreement with the creditor to take a part of the debt for the whole, and in which some secret arrangement is made between the debtor and the creditor, not communicated to the surety, or between the debtor and some of the creditors signing the com-.position deed, not made known to the others, by which the *613 creditor in question is to receive some benefit for his acquiescence in the compromise not shared in by the others, is applicable to this case. In such a case even the party who is to receive the benefit cannot enforce it against the debtor, because it is a fraud on the surety or the other creditors. (Cecil v. Plaistow, Anst., 202; Weed & Weed v. Bentley, 6 Hill, 56.) The principle has been applied to a case very analogous to the present, (Stewart v. Trustees of Hamilton College, in error, 2 Denio, 403,) in which the Trustees sued Stewart upon a subscription made by him and others to raise a fund for the college. None of the subscriptions were to be binding unless the aggregate of all amounted, by a certain day, to $50,000; previous to that day certain individuals entered into an agreement to make good any deficiency that might appear in the amount of the subscriptions on the last day before that in which the aggregate was to be completed, and it was contended by the Trustees that this agreement, with the subscriptions already obtained, was a fulfillment of the condition upon which the subscriptions were to become binding; but it appeared on the trial, that when that agreement was signed the Trustees passed a resolution by which they pledged themselves to continue to raise subscriptions and contributions after the day stipulated for the completion of the aggregate amount aforesaid, to save harmless those persons who might pledge themselves to make good the deficiency. The Trustees obtained judgment, but the Court of Errors reversed the judgment on the very ground that this undertaking to-indemnify those who had guaranteed against a deficiency was a fraud on the other subscribers. “ The essence of every agreement of this kind,” said the Chancellor who gave the opinion of the Court, “is that there should be perfect equality among the subscribers as to the nature and extent of their respective liabilities, for the several sums subscribed by them respectively.”
Every subscriber is entitled to insist that every other subscription shall be as bona fide and as binding as his own.
Did any of the evidence ruled out in this case tend to establish a fraud of this description ? and first as to the resolution of 30th October.
That resolution was to the effect that if the members of the Finance Committee or their friends should make themselves *614 personally liable in paying or arranging for funds to pay the pressing liabilities of the Company, and to sustain the institution till other means could be provided, such liabilities should be treated and considered as confidential, in any event equal in all respects to the amount of $40,000 already subscribed by the friends of the Company for its relief.
I think the obvious meaning of this resolution is to place the members of that committee and their friends who might, through their influence, be instrumental in raising funds for the relief of the Company on some footing of confidential preference which the subscribers to the $40,000 tund already enjoyed. What mode of raising funds was contemplated, is not so obvious, but I think it is fairly to be inferred from the phraseology of the resolution, that it was by means of subscriptions. It would perhaps be forcing the construction of the resolution, to say that it had reference to the subscriptions for $400,000 which were subsequently authorized by the resolution of November 8, but that is not of vital importance. It is enough that the resolution recognizes the $40,000 subscription as already a confidential one, and that can have no other meaning than that some arrangement had been made in favor of that class of subscribers, which was in ■some event or under some contingency to give them an indemnity for their subscriptions, or some peculiar preference in respect to reimbursement out of the assets of the Company. In what respect does this differ in principle from the resolution of indemnity in the case of Stewart v. Trustees of Hamilton College, above cited?
In any aspect in which I can view it, it was some evidence to go to the jury in respect to some beneficial arrangement between- the Company and a very important class of the subscribers, having respect to their liability as subscribers, which was not shared in by the others, certainly not by the defendant.
Without this $40,000 the $300,000 of subscriptions could not manifestly be made up, and if the subscribers to that fund were entitled to any benefit in respect to their liability, by virtue of an arrangement with the Company, entered into before the other subscriptions were solicited, and not communicated to and assented to, or shared in by the others, it was a fraud upon them.
*615 If it be said that by reason of the absence of the missing book it cannot certainly be said that the whole $300,000 may not have been made up without the aid of this particular amount, the answer is, that the whole evidence is opposed to such an idea; and if it were not, this amount could not be separated from the rest; it would still remain true that some portion of the subscribers, whose aggregate constituted the $300,000, had a private beneficial arrangement with the Company, which the others did not, if this testimony could establish it. If it tended to establish it, it should have gone to the jury.
The resolution of 30th October was contained in the book of minutes of the Board of Directors. No objection was made to the competency of the proof, nor that the book was not identified, and there is nothing to raise a presumption that it was not a regular official act.
In respect to the questions above quoted and overruled, and the offer of testimony also overruled, it may be observed that all of them, in a greater or less degree, tend to prove some secret arrangement between the Company and some of the subscribers, by which they were to be favored, in respect to their subscriptions, in some manner not common to all. The question put to Mr. Ogden, Vice-President of the International Insurance Company, in respect to his subscription, was a competent and proper question if the object was to call out the existence of such an arrangement, and there could have been no other; but it was ruled out on the ground that it tended to vary, by parol, the terms of the subscription.
The question to same witness, whether the notes of that Company had been given in pursuance of the subscription, was immaterial and improper, except in connection with the other object, and as bearing on that may have been pertinent.
The question to the witness Bainbridge, one of the subscribers, as to whether any and what inducements had been offered to him to make his subscription, was accompanied with an avowal that the counsel proposed to prove that there was a parol arrangement amounting in effect to an agreement that he need not give his notes for his subscription; yet it was ruled out.
The question to Whipple, the agent of the Philadelphia Insurance Company, was directly to the point, whether any parti *616 cular arrangement existed between him and the Atlas Insurance Company in reference to his subscription, and if so, what; but it was objected and ruled out, on the same ground as the others, that it sought to vary the terms of subscription by proof of a parol arrangement.
The question to the same witness, whether the Atlas Insurance Company was indebted to the Philadelphia Insurance Company, was perhaps properly ruled out—certainly it had no significance, as the previous question had been overruled, and yet, as bearing on the main question of fraud, might have been a very pertinent inquiry if that question had been allowed.
The question put to Arrowsmith, a subscriber, whether his subscription was one substituted in the place of the subscription of another party, was made with the avowed object of showing that some of the sums were subscribed by the Trustees themselves, with a parol privilege reserved of procuring other subscribers subsequently in their place, and that the witness’s subscription was one which was so substituted. Such an arrangement would give the parties with whom it was made an opportunity of relieving themselves wholly from their subscriptions, if they could procure others in their place. The substituted ones may have been less responsible; at all events it was an advantage which they had which the others did not possess.
It is said, however, that this evidence is all inadmissible, as it tends to contradict the terms of the subscription, which is a written contract.
This objection does not apply to the resolution of 30th October, but if it did my opinion would still be the same. The subscription was not under seal, and parol evidence is always admissible, on the part of the injured party, to show that such an instrument was procured through fraud, where the controversy is between the original parties or those affected by their equities. Even in the case of a deed a parol trust or agreement inconsistent with the face of it, may be proved by a creditor assailing the deed for fraud. Even the parol declarations of a party in possession of land, showing that the deed he holds under is void for fraud, are admissible in an action of ejectment by him against his tenant. A surety in a bond may show he signed it on condition that others should sign it also, and that they did not. (11 Peters, 86.)
*617 It is, in my opinion, no answer to say that the parties who were to be benefited by the secret agreement could not themselves set it up to defeat their own contract, and that therefore it is a mere nugatory agreement. Such a proposition is not universally true.
A party to a note may allege in his defense that it was given to the plaintiff in fraud of a surety, who had become responsible for him on another note given as a compromise of his debts, and which the surety was induced to indorse on the supposition that it was to be in full of the plaintiff’s claim against his principal. This was held a perfect defense in Weed v. Bentley, (6 Hill, 56,) even in favor of the debtor who was a party to the fraud.
The arrangement by which the note sued upon was given, in addition to the note indorsed by the surety, (and contrary to the assurances made to him that the note he indorsed was to be in full of the debt,) must have been proved by parol.
The cases on this whole subject are very numerous. (Cow. & Hill’s Notes, n. 967-969; 1 Phil. Ev., 551; 1 Greenl. Ev., § 284; Chitty Con., 113; 16 Mass., 278; 11 Wend., 533.)
The position that a party to a written contract (executory and not under seal) cannot set up a secret agreement between some other parties to it and the party to whom the obligation is given, and which operates as a fraud on his rights, unless the agreement be also in writing, I do not assent to. Such a rule would always exclude parol evidence of a fraud in such cases.
In Cecil v. Plaistow, (1 Anst., 202,) cited by the Chancellor in Stewart v. Trustees Hamilton College, at page 419, (2 Denio,) the point of the decision was not that the creditor had got an additional bond, (in fraud of the other creditors,) which he could sue upon, but that there was a secret understanding with his debtor that he should retain the whole original claim, provided he would sign the composition deed for one-half, and thereby induce the other creditors to do the same; and hence the Chancellor says, “ Any private agreement or understanding ” between the debtor and any particular creditor in a composition deed, &c., shall be void as a fraud on the other creditors. Such secret understanding can only be proved by parol.
The point of the fraud in such cases consists not in the fact that a particular creditor has secretly got another security which he may enforce, but that the complaining creditor has been *618 induced to come into a legal obligation under a suppression or misstatement of facts, which he ought to have been apprised of, and which, if he had known according to the truth of the case, it is fair to presume he would not have entered into the obligation.
In my opinion, some or all of these questions .should have been allowed, and the resolution of October 80 admitted in evidence, and it was error to exclude them. If I am right a new trial ought to be granted.
A question was put to the witness Tracy, the Secretary of the Company, as to what was the amount of the Company’s liabilities when it suspended in March, 1856, which was objected to and ruled out. The object of it was to show that the Company must have been insolvent in February preceding, when the defendant’s subscription was procured. Had the question been allowed, I should not have deemed it error, nor am I willing to say that it was erroneously excluded. The time within which an inquiry of that nature must be limited, is necessarily a matter of discretion with the Judge.
It was perhaps unnecessary, under the view I have taken in respect to the evidence offered to show fraud on the defendant, to have discussed the other exceptions, but I have done so in order that the counsel may have the benefit of the views of the Court on another trial.
I have not adverted to the question of the plaintiff’s title as a lone, fide holder for Value, this Court having already decided in General Term, in April, 1858, on an appeal from the decision of the Referee who first trjed it, that the terms of the receipt given for this and the other two notes turned over to them at the same time, did not warrant the Court in holding that the notes were received in absolute payment for the rent, and the evidence on the second trial did not on this subject materially differ from that which was adduced on the first. The case is therefore fairly open to the defenses which were interposed on the trial, and have been discussed herein.
In my opinion there should be a new trial.
Woodruff, J., concurred in the conclusion of Mr. Justice Hoffman, that the judgment should be affirmed. •
Judgment affirmed.