Mr. Justice Cox
delivered the opinion of the court:
This is an action on a promissory note. The note furnishes an example of what is called in the books an irregular indorsement. On December 27, 1882, S. P. Brown, as general manager of the A. L. L. & B. Company, executed a note for $3,000, payable four months after date, wherein he promised to pay to the order of H. Hutchinson $3,000, value received, wijth interest at the rate of 7 per cent, per annum until paid. The note was never' indorsed by the payee, Hutchinson, but George M. Bobeson indorsed it, and it then *142 came into the hands of Hutchinson, to whose order it was made payable, and his executrix brings this suit upon the note. The declaration contains three counts. In the first count, the claim is made against- Robeson as indorser; in the second count, as guarantor; and the third count claims that Robeson and Brown were joint makers. Robeson filed a number of pleas to the declaration, and in the eighth plea he says that he wrote his name upon the back of said note as an indorser at the request of Samuel P. Brown, and for his accommodation, to enable him to raise money thereon, with the express understanding and agreement that the payee thereof, Hayward M. Hutchinson, should indorse the same as first indorser, for the accommodation of the maker, before the same should be negotiated; that the said note was passed to said H. M. Hutchinson without this defendant’s knowledge or assent, and in violation of said understanding and agreement; that he did not indorse said note to said Hutchinson, nor did he place his name upon the back of said note for the purpose of making himself liable to said Hutchinson, nor for any other purpose than to make himself responsible upon said note as second indorser, and that said Hutchinson was fully aware of this defendant’s relation to said note, and the defendant is not liable to the plaintiff.
The testimony of the witnesses on the two sides is directly contradictory.
John F. Olmstead, a witness for plaintiff, testified that he was the son-in-law and business agent of Hayward M. Hutchinson; that Brown was indebted to Hutchinson on account of a note for over $5,000, and he, witness, had been anxious to have a settlement of the note, and finally Hutchinson instructed him that if Brown would give a note for $3,000, indorsed by Robeson, he would accept it and deliver up the old note; and he further testified that A. P. Brown, acting for the defendant, S. P. Brown, brought to him the note in suit, which was delivered in satisfaction of the original note; that he accepted it and surrendered the old *143 note, and that when it fell due it was duly presented and protested for non-payment, and afterwards put into the hands of an attorney for suit. Immediately before the trial the defendant, S. P. Brown, came forward and asked leave of the court to be allowed to confess judgment against himself for the amount in issue, and leave was granted and judgment entered, notwithstanding the objections against the same by the plaintiff’s counsel. This was done to relieve Mr. Brown from the disqualification of being a. party to the suit, and being thereby disabled to testify to transactions with the deceased. Thereupon he testified, in substance, that there never was 'any note due from him to Hutchinson for $5,000 or over, .but he simply applied to him for a loan of $3,000. Hutchinson told him, he says, that he would get him the money if-he would bring a note to him with a good indorser, and he named Robeson as a satisfactory indorser; that he would get the note discounted in bank and procure the money for him in that way; that he, Brown, thereupon made the note in question and took it to Robeson and requested him to indorse it. Robeson remarked that the payee had not yet indorsed it, whereupon Brown said that he would see that the payee indorsed it before the note should be discounted, and that Robeson put his name on it with the understanding between Brown and Robeson that Hutchinson was to indorse it afterwards as first indorser; that he took' the note with Robeson’s name on it to Hutchinson, and they went to Middleton & Company’s Bank to have it discounted, but the latter refused” to do it; that thereupon Hutchinson drew his check to Brown for $3,000, gave him the money, and retained the note.
If Olmstead’s story is true, that this note was indorsed by Robeson for the purpose of enabling Brown to pay off and discharge a debt to Hutchinson, and the note was delivered to Hutchinson with this indorsement of Rdbeson’s on. it, it is claimed on the part of the plaintiff that *144 Hutchinson had a right to treat him as maker of the note with Brown, and of course has his right of action against, him.
On the other hand, if Brown’s story is correct, that Robeson indorsed the note with the understanding that his name was to be used as a second indorser, then the claim of defendant Robeson is, that instead of his being liable to Hutchinson, Hutchinson would be liable to him, if he, should have to pay the note to holder, and that Hutchinson had no claim against him at all.- At the trial of the case, various instructions were asked, based upon these different versions of fact, and it was also asked of the court, by the plaintiff, that the whole of the testimony of Brown should be excluded from consideration by the jury upon the ground that he could not qualify himself to testily by confessing judgment in the case against the objection of the plaintiff.
In this condition of the case it becomes important, first, to ascertain what is the law in relation to these irregular indorsements.
This matter was before the United States Supreme Court in the case of Good vs. Martin, 95 U. S., 90, and Judge Clifford, in delivering the opinion of the Court, says:
“Decided cases almost innumerable affirm the rule that if one, not the promisee, indorses his name in blank on a negotiable promissory note before it is indorsed by the payee and before it is delivered to take effect as a promissory note, the law presumes that he intended to give it credit by becoming liable to pay it, either as a guarantor or as an original promissor.”
“Beyond all doubt the contract should be construed as it -was at the time it was made. If made at the inception of the note, it is presumed to have been for the same consideration and a part of the original contract expressed by the nofe. If made subsequently to the date of the note and without a prior indorsement by the payee, it will be pre *145 sumed that it was not made for the same consideration, and the party, if liable at all, will be regarded as a guarantor.
“ These remarks apply where the third person indorses the note before the payee.
“Irregularities of this kind in the execution of promissory notes are noticed by Judge Story in his work on Promissor}^ Notes, and he says that the maker and such a party are both to be deemed original promisors, and the note a joint and several promissory note to the payee, although as between the maker and the other party they stand in the relation of principal and surety.
“None will deny, it is presumed, that the cases cited sustain the proposition, where the third person indorses his name in blank on the note at the time when it was made and before it was indorsed by the payee.”
He sums up as follows: “ When a promissory note made payable to a particular person or order is first indorsed by a third person, such third person is held to be an original promisor, guarantor, or indorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place.
“ If he puts his name in blank on the back of the note at the time it was made and before it was indorsed by the payee to give the maker credit with the payee, or if he participated in the consideration of the note, he must be considered as a joint maker of the note.”
Now, bearing this statement of the law in mind, it is proper, first, to call attention to the two jmayers asked on the part of the plaintiff — the fourth and fifth. The fourth is, “ If the jury shall find from the evidence that the defendant, Brown, being desirous to raise some money, made the the note in question, and, for the purpose of getting it discounted through the payee, Hutchinson, procured the defendant, Robeson, at the inception of the note, to indorse it, and at the time of such indorsement Brown stated to Robeson that Hutchinson (the payee) would indorse, and *146 that Brown then took the note to Hutchinson and delivered it to him, and received from him a check for the money for it without informing him (Hutchinson) of the statement so made by him to Robeson, the plaintiff is entitled to a verdict.”
The fifth, while asserting the same law, goes further and says that there was no evidence that the statements made by Brown to Robeson were made with-Hutchinson’s consent. It is as follows :
“If the jury shall be satisfied from the evidence that’the defendant Brown, being- desirous to raise some money, made the note in question for the purpose of getting it discounted through the payee, Hutchinson, and to that end procured Robeson, about the time of its date, to indorse it, and at the time of said indorsement said Brown told Robeson that Hutchinson (the payee named in the note) would indorse it, and that Brown soon afterwards delivered the note thus indorsed to Hutchinson, the plaintiff is entitled to recover, there being no evidence offered to the jury to show that Brown made such statement to Robeson with the knowledge, consent, or acquiescence of said Hutchinson, and the burden of proof being on the defendant to show that the indorsement on the note was qualified at the time thereof or before delivery of the note, with the consent or acquiescence of Hutchinson.”
According to the law, as laid down by the Supreme Court, the production of this note to Hutchinson, with the indorsement of Robeson upon it, with nothing more, entititled Hutchinson to presume that Robeson was an original party and participated in the original consideration for the note. In other words, the presumption was, on the face of that note when presented to him, that it was the joint, or joint -and several note of these two parties. In point of law, the instructions asked upon the part of the defendant did not differ from the instructions asked in this respect upon the part of the plaintiff.
*147 The first and second instructions of the defendant are as follows:
“ If the jury believe from the evidence that Samuel P. Brown, pursuant to a prior arrangement with Hutchinson, ■deceased, made the note in suit, and procured the defendant, George M. Robeson, to indorse the same for Brown’s ■accommodation, with the understanding of all parties that said note should also be indorsed for said Brown’s accommodation, for the purpose of having it discounted by the bank for Brown’s benefit, they must return the verdict for the defendant.”
The second is:
“If the jury believe from the evidence that the defendant Robeson indorsed the note in suit at the request of and for the accommodation of the maker, Brown, and delivered the same to him for the purpose of having said Brown procure the indorsement of the payee, Hutchinson, deceased, also for his, Brown’s "accommodation, with the understanding of all the parties that when the said note ivas indorsed it should be discounted at .bank for Brown’s benefit, they must return a verdict for the defendant.”
In other words, the plaintiff claims that, although Brown procured Robeson’s indorsement with the understanding that it should not be used until the payee indorsed it, yet if he presented it to the payee without any explanation of this understanding with Robeson, Hutchinson had a right to treat it as if no such understanding took place and as if Robeson was an original maker of the note. All the prayers for the defendant that claimed Robeson’s exemption from liability are based on the assumption that the note was indorsed by Robeson with the understanding of the parties — that is, of Hutchinson as well as of himself — that he should be eal-led upon only as second indorser; yet, in fact, the record does not show any proof at all that Hutchinson was aware of this understanding between Robeson and Brown that Robeson was to be the second indorser of *148 the note. The note was presented to Hutchinson with Robeson’s indorsement, and it was presented and accepted as a joint, or joint and several, note of Brown and Robeson, and nothing appears to have been brought home to Hutchinson giving it a different import. Then the presumption would: be, if that is the true state of facts, that this note was the-joint, or joint and several, note of Brown and Robeson, and when it was presented to Hutchinson he had a right to treat it as such. According to the law as laid down in Good vs. Martin, if that be true, there was error in refusing the fourth and fifth instructions asked on the part of the plaintiff. But it is claimed that the note, in contemplation of law, never was negotiated at all, never was delivered to Hutchinson, because the note was in the hands of Brown for certain purposes, as an escrow, and not to be used except on a certain condition — that is, that the payee of the note should indorse it first. It is perfectly well settled that any arrangement made between- parties, that a bond or instrument is to be held in escrow and not to be delivered except in certain contingencies would be binding between the parties to the arrangement; but the law, as applied to negotiable paper, is equally well settled, that if the note passes for value to a third person without notice of such arrangement, he is to be protected. This point was decided in the case of Vallet and others vs. Parker, 6 Wendell, 615, which is a well considered case, and is cited with approval by text-books such as Parsons on Negotiable Instruments, <&c. The court said, “ As between the original parties to this note, it would be a good defense to show that it was delivered as an escrow, but not so in an action by a subsequent bona fide holder for valuable consideration and without notice. It is argued that such a note was never delivered, and therefore void ; but is it more imperfect or void than an accommodation note before it is negotiated ? While in the hands of the payee or any agent of his, it is not a valid instrument; there has been no valid delivery; no suit can be sustained upon it any more than on *149 :a note delivered as an escrow; but the moment an accommodation note is passed bona fide to -an indorsee, who gives value for it, it becomes a valid security, and even if it is fraudulently put into circulation, he who has paid value for it shall not be defrauded. But, if any innocent person must suffer, it should be that one who, by his act, has enabled a third person to commit the fraud. Woodhull vs. Holmes, 10 Johns., 231, was substantially the case of a note delivered as an escrow. It was put into the hands of a third person for a special purpose; that 'purpose was to have the ■note discounted at a bank. In that event, the parties to the note, or one of them, would have received the money. Instead of doing .so the agent passed it to a broker and put the money into his own pocket. How does this case differ in principle? The note was deposited as an escrow, says the defendants, till possession of the theater should be delivered; but the person who had it fraudulently gave it to the payee, who negotiated it for a valuable consideration.”
So that, whatever the arrangement was between Brown and Robeson, the latter, by indorsing this note in blank and putting it in the hands of Brown, put it into his power to negotiate it for value to a third person. It was passed to the hands of Hutchinson, apparently, without any notice of the alleged understanding between Robeson and Brown, and Hutchinson paid him value for it by paying :$3,000 for it, according to Brown’s testimony, or by cancel-ling an outstanding debt of over $5,000, according to the testimony of Olmstead.
Upon that state of facts, the court should have instructéd the jury that the plaintiff was entitled to recover, notwithstanding the alleged arrangement and understanding between Brown and Robeson. This will be sufficient to dispose of the present motion for a new trial on exceptions; but it is suggested that when the case comes to be tried anew, precisely the same question as to the competency of Brown as a witness will be raised again, and we had better settle it now.
*150 It is a peculiar practice under our law that the maker and indorser of a note can be joined in the same action. The causes of action against them are essentially several. They must be established by different forms of proof, and they admit of different defenses. We had occasion to consider this subject somewhat in the suit of Keyser vs. Fendall, Admr. of Hume, 5 Mackey, 47. One party was the maker and another the indorser. Hume having died and an administrator having been appointed, the question in the case was, whether a joint action against the survivor and the administrator of the deceased could be sustained and the latter could be cited to appear; and we held, in that case, that the several character of the causes of action was so far preserved that the parties could be joined in suit and judgment be given against them separately. In that case, the judgment could be given against the administrator de bonis testatoris and against the other party de bonis propriis. Following out that view, if this were confessedly the case of a suit against the maker and indorser, we should perhaps have to hold, to be consistent with our former view, that Brown could confess a judgment separately and thereby render himself competent to testify, where, as a party defending and without such confession, he could not do so.
In this case it appears that at the trial the plaintiff waived two of the counts of his declaration — that is, those describing Robeson as indorser or guarantor, but sought by proof to recover against him as joint maker of the note; and at the conclusion of his evidence, prima fade, these two parties were joint, or joint and several, makers of this note, and in that view of the case Brown was directly within the prohibitions of Sec. 858, Rev. Stats. U. S., which provides that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party or required to testify thereto by the court.
*151 Consequently, on -the face of the record and evidence as then presented, Brown was clearly disqualified from testifying to any transaction or conversations between himself and the decedent. If the relation between these parties had been shown aliunde, or had been admitted to be that of maker and indorser, then it is possible that Brown might have come forward and confessed judgment against himself ; but it is very evident that he could not by his own testimony establish that relation, because he could only do so by testifying to facts which he was, prima facie, disqualified from proving. This brings us to the questiou whether, without reference to any testimony to be given, one of two joint defendants can confess judgment against the objection of the plaintiff, so that he can put himself outside of the case and cease to be one of the parties to the cause. It is very well settled that where there are joint contractors, if the plaintiff obtains a judgment against one of the parties, it merges the whole cause o.f action and puts an end to the right of action against the other. In the case of Sheehy vs. Mandeville, 6 Cranch, 254, the Supreme Court held that, although a separate judgment had been recovered against one of several joint promisors, the plaintiff might sue the others; but this was overruled by the court upon ver full consideration in the case of Mason vs. Eldred et al., 6 Wall., 231, so that the law may be taken as settled that a suit and judgme'nt obtained against one of two joint promisors is a complete merger of the cause of action, and puts an end to any right of action against the other; and it would follow, as a corollary, that if the plaintiff brings suit against two joint promisors and accepts a judgment against one, that would of course put an end to the cause as against the other; it is called a merger of the whole cause of action. Practically, there is no difference in this respect between a joint and a joint and several cause of action. It will be observed that in the case of Good vs. Martin, the Supreme Court speaks of the maker and the irregular indorser as *152 joint makers and they refer to Judge Story’s work on Promissory Notes, where he speaks of them as joint and several promisors. Assuming it to be a joint and several contract, if you sue upon the joint contract and take a judgment against one of the parties it merges that cause of action and you could not proceed afterwards, in the same action, to judgment against the other. That very question was decided by the Supreme Court of Pennsylvania in the case of Beltzhoover vs. The Commonwealth, 1 Watts (Pa.), 126. In that case, all the defendants were served with process to appear and one of the defendants confessed judgment with the consent of the plaintiff’s attorney; after which the plaintiff entered a rule to refer the cause to arbitrators, who subsequently made a report finding for the plaintiff against the other defendant for so much money, upon which report judgment was entered, and to reverse it a writ of error was sued out and the judgment of the court below was reversed. The court said, “By taking a judgment against L. Stewart alone, the plaintiff below has precluded himself forever from proceeding again upon the same bond, for the same cause of action, in either a joint or several' action against Stewart, and demanding or obtaining another judgment. His right of action for the same cause is merged in the judgment already confessed and has put an end to the action as regards Stewart. But having commenced his action jointly against Stewart and the other defendants below, he has no right to demand a judgment against the latter without including Stewart. He, however, has already got one against Stewart, and therefore cannot have another for the same cause. Hence it is manifest that he must be content now with his judgment which he has against Stewart as his only security and the judgment against Henry Beltzhoover is error for the reasons already mentioned.”
Now, if that be true in a case where a judgment against one of several defendants is accepted by the plaintiff, it must be apparent that no plaintiff can be compelled to accept *153 .judgment against one of several defendants, for the reason that it deprives him of the right to obtain judgment against the rest of them. That question has also been decided in the Court of Appeals of Virginia, in the case of Taylor vs. Beck, 3 Randolph, 316. In that case, against the objection •of the plaintiff, one of several defendants confessed judgment and then was offered as a witness, and that was the subject of error in the Court of Appeals, and the court used this language, in closing the opinion: “1 shall not attempt to anticipate what they (some of the judges) will express so much better, but will content myself by saying that I concur with them in the following points: That our statute giving a joint'action in this case [though on separate contracts] subjects the parties to all the consequences following from the settled rules of the common law giving joint actions ; that of the consequences, one is that the plaintiff •must recover against all or none; another, that he has a right to a joint judgment against all for his debt and all his costs; .that of this joint judgment W. Woodford had no right to deprive him by having his cognovit actionem entered finally, against the plaintiff’s will, while the cause was pending on the plea of the other defendants; that the act making a confession of judgment equal to a release of errors did not change the case as to the rights of the plaintiff, or the propriety of, entry ; that the cognovit tender could only be received and entered by the court as an interlocutory judgment dependent upon the final judgment to be rendered in the case and consequently that W. Woodford was inter•ested in the judgment and could not be admitted as a witness.”
In other words, a party cannot relieve himself from the •disqualification attaching to a party to the suit by confessing a judgment. Of course he has a right to confess judgment.
This matter came before the Supreme Court of the United States, as far as the competency of the party to testify was *154 concerned, and was decided in the case of the United States vs. Leffler, 11 Peters, 86. This was an action brought by the United States against a principal and his sureties upon his official bond. The principal confessed judgment and was taken in execution. He took the benefit of the insolvent law and was discharged from custody. Some time afterward, the case 'remaining in statu quo in the meantime, the Government went on and tried the case against the other defendants, and they offered the discharged principal as a witness in their favor, to which objection was made, but he was allowed to testify, and the Government took the case to the Supreme Court, and there the objection was made that this party was not qualified to testify, and the court said: “ The argument to prove that he is a party upon the record is, in substance, this: That the plaintiff having elected to bring a joint action upon the bond, there could not be a several judgment against any one of the obligors, but that it must bo a joint one, either for all or against all; that, therefore, the several judgment in this case against Salatheil Curtis was erroneous, and that, notwithstanding that judgment, together with the defendants, Jacob and Isaac Leffler, in the event of one being recorded against them.
“The plaintiff’s counsel relied, with great emphasis, upon the case of Taylor vs. Beck, 3 Rand., 316, as being, as he contended, conclusive in their bearing upon the case at bar. Let us examine them. They -were two actions on promissory notes negotiable at the bank against the drawer and indorsers jointly, brought in that form by virtue of an act of Assembly of Virginia. One of the defendants pleaded separately and the others jointly. The defendant who had pleaded separately confessed a judgment, and at the trial the other defendants offered to introduce him as a witness on their behalf, and the question was whether he was not incompetent on account of interest, and it was decided that he was incompetent. Now, the first remark to be made *155 upon that case is that there was no release by the co-defendants, as there was in the case at bar. The court, however,, thought that as the action was joint, the plaintiff had a right to a joint judgment against all for his debt and all his costs; that the defendant who had confessed judgment had no right to deprive him of this joint judgment by having his cognovit actionem entered finally against the plaintiff's will whilst the cause was depending on the pleas-of the other defendants. They, therefore, considered him still a party to the record, and consequently an incompetent witness. The fact that the judgment in that ease was without the consent of the plaintiff is mentioned not less than four or five times by the judges in giving their opinion. Thus, in one place it is said that W. Wood-ford had no right to deprive the plaintiff of his joint judgment by having his cognovit actionem entered finally against the plaintiff’s will.
“Again, it is said that the court could not properly enter a final judgment upon his confession without the assent of the plaintiff until after the issues were tried as to the other defendants,” &c. Again, they say, “ it follows that if either of the other defendants had been discharged from the plaintiff’s demand in whole or in part, Woodford {the plaintiff having refused to take final judgment on the confession at the time it ivas made) would have been entitled to avail himself thereof.” And the court further said, “ the plaintiff refused to-accept his confession and to take judgment thereon. It is not not necessary to inquire whether a proper and' unimpeachable judgment might have been entered on this confession separately against Woodford if the plaintiff had desired it.
“ We are of opinion that there is no ground on which these plaintiffs in error can reverse the judgment against them. . They themselves have taken, with their own consent, a separate judgment against Curtis. Upon that- judgment they issued a ca. sa., by virtue of which his body was taken. Under the insolvent laws of the United States he was- *156 discharged from imprisonment. Let it be conceded, for the purpose of this part of the argument, that the judgment was ever so erroneous, can it be reversed? We think clearly that it cannot, and this for many reasons:
“1. It was taken by the plaintiffs themselves with their own assent;
“ 2. They had carried it into execution and, as far as they could, reaped its fruits;
“ 3. The period within which a writ of error could be sued out has been twice barred by lapse of time;
“ 4. By the very terms of the law under which Curtis was discharged from imprisonment the judgment is declared to remain in fprce, and that the plaintiffs have a right of satisfaction of it out of his property.
“Curtis himself is barred, not only by his availing himself of the benefit of the insolvent law, which declares that the judgment is to remain in force, but also by time from reversing it, if he ever could have done so. We think, therefore, that he is as completely severed from the record and has entirely ceased to be a party as if he had never been sued.”
In that case the judgment was given with the consent of the United States, and of course they could not take any advantage, by writ of error, of that proceeding; but in the case in 3 Rand, the judgment was given against the consent of the, plaintiff.
It seems to follow, therefore, that at the conclusion of the testimony in behalf of the plaintiff, Brown was in such a position that he could not, by having confessed judgment, get out of the case and cease to be a party of record against the consent of the plaintiff. We thought proper to express an opinion Upon this question, because, undoubtedly the same question will be raised again on a new trial.
The motion for a new trial is granted,